1  Pamela K. Fulmer, State Bar No. 154736
   Dee A. Ware, State Bar No. 154549
2  TACTICAL LAW GROUP LLP
   4 Embarcadero Center, Suite 1400
3  San Francisco, California 94111
   Telephone No.:  (415)766-3509
4  Fax No.:  (415) 231-5272
   E-Mail: pam@tacticallawgroup.com
5          dware@tacticallawgroup.com

6  Attorneys for Plaintiff RIVER SUPPLY, INC.

7

8                   UNITED STATES DISTRICT COURT

9              FOR THE NORTHERN DISTRICT OF CALIFORNIA

10 RIVER SUPPLY, INC., a Pennsylvania          Case No.: **3:23-cv-02981-LB**
   Corporation,
11                                             **OPPOSITION OF PLAINTIFF RIVER**
12     Plaintiff,                              **SUPPLY, INC. TO DEFENDANTS**
                                               **ORACLE AMERICA, INC. AND**
13     v.                                      **NETSUITE, INC'S MOTION TO**
                                               **DISMISS AND MOTION TO STRIKE**
14 ORACLE AMERICA, INC., a Delaware
   corporation; NETSUITE, INC., a Delaware
15 Corporation; SPS COMMERCE, INC., a Delaware
   corporation; VEND LIMITED, a New Zealand    Hon. Laurel Beeler
16 corporation; LIGHTSPEED COMMERCE INC., a
   Canadian Corporation; APPFICIENCY INC., a
17 Canadian corporation; and Does 1 through 100,
                                               Date: August 24, 2023
18                                             Time: 9:30 a.m.
                                               Court Room B
19     Defendants.
                                               Action Filed:  June 16, 2023
20

21

22

23

24

25

26

27

28

## <u>TABLE OF CONTENTS</u>

INTRODUCTION ................................................................................................................1

ARGUMENT ......................................................................................................................2

I.     RSI'S FIRST AMENDED COMPLAINT HAS BEEN PROPERLY PLED ..................2

     A.     Legal Standard Under Rule 12(b)(6).......................................................2

     B.     RSI Has Met the Standard for Pleading Fraudulent Inducement .........................2

          1.     RSI Has Pled Detailed and Actionable Misrepresentations .....................3

          2.     RSI Has Adequately Pled Intent to Defraud ............................................7

          3.     RSI Has Pled Justifiable Reliance ............................................................8

          4.     The Integration Clauses Do Not Negate Justifiable Reliance .................9

          5.     RSI Has Alleged Negligent Misrepresentation with Particularity ..........11

     C.     The Economic Loss Rule Does Not Bar RSI's Tort Claims .............................12

     D.     The Oracle Contracts are Unconscionable .......................................................14

          1.     The FAC Adequately Alleges Procedural Unconscionability.................15

          2.     The FAC Adequately Alleges Substantive Unconscionability ..............18

     E.     RSI's Other Claims are Valid and Should Not Be Dismissed ..........................18

          1.     RSI Has Successfully Pled Claims for Breach of Contract and
               Warranty ..................................................................................................18

          2.     RSI Has Stated a Claim for Breach of the Implied Covenant ................20

          3.     RSI Has Adequately Stated a California Penal Code § 496 Claim .........21

          4.     RSI Has Adequately Stated a UCL Claim ..............................................22

          5.     The Declaratory Relief Claim Is Not Duplicative..................................23

     F.     Oracle's Motion to Strike Should be Denied ....................................................23

CONCLUSION ................................................................................................................25

TACTICAL LAW GROUP LLP
4 EMBARCADERO CENTER
SUITE 1400
SAN FRANCISCO, CA  94111

OPPOSITION TO MOTION TO DISMISS          CASE NO. 3:23-cv-02981-LB

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**TABLE OF AUTHORITIES**

**Cases**

*A & M Produce Co. v. FMC Corp.,* 135 Cal. App. 3d 473 (1982) ..........................14, 15, 17, 18

*AdTrader, Inc. v. Google LLC*, No. 17-CV-07082-BLF, 2018 WL 3428525 (N.D. Cal. July 13, 2018)................................................................................................................21

*Alvarez v. Adtalem Educ. Grp., Inc*., No. 19-CV-04079-JSW, 2019 WL 13065378 (N.D. Cal. Dec. 16, 2019)......................................................................................................21

*Andre v. United States Bank, N.A.,* No. CV 20-4854-CBM-(PJWx)), 2021 U.S.Dist.LEXIS 154737 (C.D.Cal. May 20, 2021)......................................................16

*Armstead v. City of Los Angeles*, 66 F. Supp. 3d 1254 (C.D. Cal. 2014) ..................................23

*Beligan v. Mercedes-Benz USA, LLC,* No. SA CV 22-02035-DFM, 2023 U.S. Dist. LEXIS 76645 (C.D. Cal. February 15, 2023) ..............................................................22

*Bell Atlantic Corp. v. Twombly* 550 U.S. 544 (2007) ........................................................2

*Benn v. Allstate Ins. Co.,* 569 F. Supp. 3d 1029 (C.D. Cal. 2021)..............................................23

*Bishay v. Icon Aircraft, Inc.,* No. 2:19-cv-00178-KJM-AC, 2020 U.S. Dist. LEXIS 7939 (E.D. Cal. Jan. 15, 2020)...........................................................................................17

*Broam v. Bogan*, 320 F.3d 1023 (9th Cir. 2003).............................................................................2

*Careau & Co. v. Security Pacific Business Credit, Inc.*, 222 Cal. App. 3d 1371 (1990) .....20, 21

*Carroll v. Myriad Genetics, Inc.*, No.: 4:22-CV-00739-YGR, 2022 U.S. Dist. LEXIS 207129 (N.D. Cal. November 9, 2022)...................................................................22

*Cellars v. Pacific Coast Packaging, Inc*., 189 F.R.D. 575 (N.D. Cal. Dec. 23, 1999) ..............20

*Circle Click Media LLC v. Regus Mgmt. Group LLC*, No. 12-04000 SC, 2013 U.S.Dist.LEXIS 1604 (N.D.Cal. Jan. 3, 2013) ...............................................................15

*Eminence Capital, LLC v. Aspeon, Inc*., 316 F.3d 1048 (9th Cir. 2003) ......................................2

*Fleet v. Bank of Am. N.A.*, 229 Cal. App. 4th 1403 (2014) ............................................................3

*Glasser v. Berzner*, SACV 21-661 JVS (DFMx), 2021 U.S. Dist. LEXIS 191243 (C.D. Cal. June 23, 2021)...............................................................................................................2

*Grouse River Outfitters Ltd. v. NetSuite, Inc.*, No. 16-cv-02954-LB, 2016 U.S. Dist. LEXIS 141478 (N.D. Cal. Oct. 12, 2016)..........................................................9, 10

*Hartong v. Partake, Inc*., 266 Cal. App. 2d 942 (1968).........................................................8, 9

TACTICAL LAW GROUP LLP
4 EMBARCADERO CENTER
SUITE 1400
SAN FRANCISCO, CA 94111

*In re GlenFed, Inc. Sec. Litig.*, 42 F.3d 1541 (9th Cir. 1994) ........................................................3

*In re Toyota Motor Corp.*, 790 F. Supp. 2d 1152 (C.D. Cal. 2011) ...............................................2

*In re: Yahoo! Inc. Customer Data Sec. Breach Litig.*, 313 F. Supp. 3d 1113 (N.D. Cal. 2018) ..................................................................................................................................15, 18

*Kentwool Co. v. Netsuite, Inc.*, No. 14-cv-05264-JST, 2015 U.S. Dist. LEXIS 19982 (N.D. Cal. Feb. 18, 2015) ...........................................................................................3, 10

*Keys v. Humana, Inc.*, 684 F.3d 605 (6th Cir. 2012) ......................................................................2

*Las Palmas Associates v. Las Palmas Center Associates*, 235 Cal. App. 3d 1220 (1991) ...12, 13

*Lazar v. Super. Ct.*, 12 Cal. 4th 631 (1996) ...................................................................................3

*Mackey v. Ocwen Loan Servicing, LLC*, No. F074094, 2018 WL 2276860 (Cal. Ct. App. May 18, 2018) ...................................................................................................................10

*Manzarek v. St. Paul Fire & Marine Ins. Co.*, 519 F.3d 1025 (9th Cir. 2008) ............................13

*Marsu B.V. v. Walt Disney Co.*, 185 F.3d 932 (9th Cir. 1999) .....................................................20

*MDOF Wells, LLC v. Total Property Solutions, Inc.*, No. 22-cv-03631-TSH, 2022 WL 18456822 (N.D. Cal. Dec. 12, 2022) ............................................................................23

*Mohamed v. Uber Techs., Inc.*, 109 F. Supp. 3d 1185 (N.D. Cal. 2014), *affirmed in part, reversed in part*, 848 F.3d 1201 (9th Cir. 2016) ...........................................................17

*Nabors v. Google, Inc.*, No. 5:10-CV-03897 EJD (PSG), 2011 U.S. Dist. LEXIS 97924 (N.D. Cal. Aug. 30, 2011) ...........................................................................................19

*Oasis West Realty, LLC v. Goldman*, 51 Cal. 4th 811 (2011) ......................................................19

*OCM Principal Opportunities Fund, L.P. v. CIBC World Mkts. Corp.*, 157 Cal. App. 4th 835 (2007) .................................................................................................................8, 9

*Odom v. Microsoft Corp.*, 486 F.3d 541 (9th Cir. 2007) ...............................................................7

*Owens v. Kaiser Found. Health Plan, Inc.*, 244 F.3d 708 (9th Cir. 2001) ...................................2

*Peloza v. Capistrano Unified School Dist.* 37 F.3d 517 (9th Cir. 1994) ....................................24

*Pokorny v. Quixtar, Inc.*, 601 F.3d 987 (9th Cir. 2010) ........................................................15, 18

*Riverisland Cold Storage, Inc. v. Fresno-Madera Prod. Credit Ass'n.*, 55 Cal. 4th 1169 (2013) ..........................................................................................................................8, 9, 10

*Robinson Helicopter Co. v. Dana Corp.*, 34 Cal. 4th 979 (2004) ...............................................12

*Rosales v. Citibank*, 133 F. Supp. 2d 1177 (N.D. Cal. 2001) ......................................................24

TACTICAL LAW GROUP LLP
4 EMBARCADERO CENTER
SUITE 1400
SAN FRANCISCO, CA 94111

*Rosenthal v. Great W. Fin. Secs. Corp.*, 14 Cal. 4th 394 (1996) ................................................10

*Scott v. Saraya, U.S. Inc.*, 22-cv-05232-WHO, 2023 U.S. Dist. LEXIS 97694 (N.D. Cal. June 5, 2023) ................................................................................................................7

*Seeger v. Odell*, 18 Cal. 2d 409 (1941) ................................................................................8

*Siry v. Farkhondehpou*r, 13 Cal. 5th 333 (2022) ........................................................21

*StreamCast Networks, Inc. v. IBIS LLC*, No. CV 05-04239 MMM (Ex), 2006 WL 5720345 (C.D. Cal May 2, 2006) ................................................................23

*Tenet Healthsystem Desert, Inc. v. Blue Cross of Cal.*, 245 Cal. App. 4th 821 (2016) ...............3

*Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097 (9th Cir. 2003) ....................................3

*Tompkins v. 23andMe, Inc.,* 834 F.3d 1019 (9th Cir. 2016) .................................16, 17

*Tompkins v. 23andMe, Inc.,* No.: 5:13-CV-05682, 2014 U.S. Dist. LEXIS 88068 (N.D. Cal. June 25, 2014) ........................................................................................17

*United States v. Technic Servs., Inc.*, 314 F.3d 1031 (9th Cir. 2002)(*overruled in part on other grounds by 593 F.3d 1135 (9th Cir. 2010)*.....................................24, 25

*White Knight Yacht, LLC v. Certain Lloyds at Lloyd's London & Other London Mkt. Insurers,* 407 F. Supp. 3d 931 (S.D.Cal. 2019) ..............................................15

*White v. FCA US LLC*, 22-cv-00954-BLF, 2022 U.S. Dist. LEXIS 146604 (N.D. Cal. Aug. 16, 2022) .........................................................................................................12

*Whittlestone, Inc. v. Handi-Craft Co.,* 618 F.3d 970 (9th Cir. 2010) ........................................24

**Statutes**

Cal. Bus. & Prof. Code § 17200 ..........................................................................................22, 23

Cal. Civ. Code § 1710(4) .....................................................................................................13

Cal. Penal Code § 496 .........................................................................................................21

**Rules**

Fed. R. Civ. P.
       Rule 8(a)..........................................................................................................2
       Rule 8(d)(2)...........................................................................................19, 20
       Rule 8(d)(3)...................................................................................................19
       Rule 12(b)(6)...................................................................................................2
       Rule 12(f).................................................................................................23, 24
       Rule 9(b)...........................................................................................2, 4, 7

Rule 15(a) ............................................................................................................2

Fed. R. Evid.
        Rule 408 ........................................................................................................24, 25
        Rule 408(a) .........................................................................................................24
        Rule 408(b) .........................................................................................................24

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

1

**INTRODUCTION**

2
3
Plaintiff River Supply, Inc. ("RSI") respectfully submits this opposition to the motion of

4
defendants Oracle America, Inc. ("OAI") and NetSuite, Inc. ("NetSuite") (collectively "Oracle")

5
to dismiss and to strike RSI's First Amended Complaint (the "FAC").  Oracle's motion is based

6
on the premise that RSI has contractually waived its right to a refund and other damages after

7
paying Oracle every penny owed under the Oracle Contracts and devoting significant internal

8
resources to the project over a period of two years, despite RSI getting nothing in

9
return.  Oracle's primary defense is that its sales team has carte blanche to lie in pre-contract

10
discussions to induce a company to enter into a contract, as long as Oracle can point to an

11
integration clause as an excuse. An integration clause that is not even within the documents

12
executed by RSI, but rather was buried in an agreement as a disguised hyperlink.  A hidden

13
hyperlink that does not even link directly to the purported contract.  As set forth in detail below,

14
Oracle cannot rely upon this clause and others to defeat RSI's claims at the pleading stage, as

15
RSI has adequately set forth allegations within the FAC to demonstrate unconscionability under

16
state law.

17
Moreover, as set forth in detail within the FAC, Oracle's scheme to promise RSI and

18
other customers a solution that does not exist in order to reap huge profits violates California

19
law.  The fraudulent business practice is adequately alleged in the FAC, including in the

20
whistleblower complaint of a former NetSuite employee attached as Exhibit 1, which

21
exhaustively details the illegal conduct.  Nonetheless, Oracle has moved to dismiss essentially

22
arguing that RSI must prove its entire case in the FAC.  RSI has met the federal pleading

23
standards alleging the fraud-based claims with particularity and has given Oracle sufficient

24
notice of all of its claims allowing Oracle to defend the lawsuit. As RSI's FAC provides

25
sufficient notice of its claims of fraud, breach of contract, statutory violations, and related causes

26
of action, Oracle's motion[1] should be denied.

27
28

---

[1] RSI objects to consideration being given to the exhibits attached to the Declaration of Anna S. McLean filed in support of Oracle's motion to dismiss. The Declaration lacks foundation as Ms. McLean does not have personal knowledge of the applicable exhibits, including the Subscription Services Agreement or the applicable P.S. Terms.

1

## ARGUMENT

**I.     RSI'S FIRST AMENDED COMPLAINT HAS BEEN PROPERLY PLED**

    **A.     Legal Standard Under Rule 12(b)(6)**

Motions to dismiss under Rule 12(b)(6) are viewed by courts with disfavor. *See, e.g., Broam v. Bogan*, 320 F.3d 1023, 1028 (9th Cir. 2003) (Rule 12(b)(6) motions are viewed with disfavor, and dismissal without leave to amend is proper only in "extraordinary" cases). The complaint must be construed in the light most favorable to the plaintiff, and the Court must accept as true all material allegations in the complaint, as well as any reasonable inferences to be drawn from them. *Id.* Plaintiff's ability to ultimately prove allegations should not be considered in ruling on a Rule 12(b)(6) motion. *Glasser v. Berzner*, SACV 21-661 JVS (DFMx), 2021 U.S. Dist. LEXIS 191243, at *2 (C.D. Cal. June 23, 2021). The complaint need only allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly* 550 U.S. 544, 556-557, 570 (2007). "[T]he complaint should be read as a whole, not parsed piece by piece to determine whether each allegation, in isolation, is plausible." *In re Toyota Motor Corp.*, 790 F. Supp. 2d 1152, 1164 (C.D. Cal. 2011). And "[i]f a reasonable court can draw the necessary inference from the factual material stated in the complaint, the plausibility standard has been satisfied." *Keys v. Humana, Inc.,* 684 F.3d 605, 610 (6th Cir. 2012). RSI has stated plausible claims and Oracle's motion should be denied.

However, in the unlikely event that the Court grants Oracle's motion in whole or in part, RSI respectfully requests leave to amend. When justice so requires, leave to amend a complaint is given freely. Fed. R. Civ. P. 15(a). This policy is "to be applied with extreme liberality." *Owens v. Kaiser Found. Health Plan, Inc.*, 244 F.3d 708, 712 (9th Cir. 2001). An amendment to the FAC is not futile, requested in bad faith or dilatory motive, and will not cause undue delay or prejudice to Oracle. *See Eminence Capital, LLC v. Aspeon, Inc.*, 316 F.3d 1048, 1052 (9th Cir. 2003).

    **B.     RSI Has Met the Standard for Pleading Fraudulent Inducement**

Federal Rule of Civil Procedure 8(a) requires that a litigant set out a short and plain statement of the claim showing that it is entitled to relief while Rule 9(b) requires that a plaintiff state a claim for fraud with particularity. RSI has met both requirements here. With regard to

pleading fraud with particularity, the "complaint must 'identify the who, what, when, where, and how of the misconduct charged, as well as what is false or misleading about the purportedly fraudulent statement, and why it is false." *Kentwool Co. v. Netsuite, Inc.*, No. 14-cv-05264-JST, 2015 U.S. Dist. LEXIS 19982, at *11 (N.D. Cal. Feb. 18, 2015) (internal quotations omitted). A complaint must set forth allegations with enough specificity "to give defendants notice of the particular misconduct . . . so that they can defend against the charge and not just deny that they have done anything wrong." *Bly-Magee v. Cal.*, 236 F.3d 1014, 1019 (9th Cir. 2001). The injured party's allegations must be more than "neutral facts" and "must set forth what is false or misleading about a statement, and why it is false." *In re GlenFed, Inc. Sec. Litig.*, 42 F.3d 1541, 1548 (9th Cir. 1994). These rules are well-settled, but they do not require absolute particularity and certainly RSI has met this pleading standard here.

Federal courts examine state law to determine whether the substantive elements of fraud have been sufficiently pled to state a claim. *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1103 (9th Cir. 2003). Under California law a misrepresentation may be express or implied by conduct or circumstances. *Tenet Healthsystem Desert, Inc. v. Blue Cross of Cal.*, 245 Cal. App. 4th 821, 839 (2016). The elements of fraud are well-established and require the plaintiff to prove: (1) a false representation; (2) knowledge of its falsity; (3) intent to deceive; (4) justifiable reliance; and (5) resulting damages.). *Lazar v. Super. Ct.*, 12 Cal. 4th 631, 638 (1996). Promissory fraud is a type of fraud claim premised on a defendant's promise to perform an act that the defendant has no intention of performing. *See*, *id.* One common form of promissory fraud is fraudulent inducement, where the defendant makes a promise it has no intention of performing to induce the plaintiff to enter into a contract. *Id.* For such a claim, a plaintiff must plead "that the promisor did not intend to perform [the promise] at the time the promise was made, that the promise was intended to deceive and induce reliance, that it did induce reliance, and that this reliance resulted in damages." *Fleet v. Bank of Am. N.A.*, 229 Cal. App. 4th 1403, 1411 (2014).

### 1. RSI Has Pled Detailed and Actionable Misrepresentations

RSI was fraudulently induced by Oracle into entering into contracts (the "Oracle

OPPOSITION TO MOTION TO DISMISS AND MOTION TO STRIKE          CASE NO. 3:23-cv-02981-LB

Contracts") for the implementation of a cloud-based subscription ERP software solution known in the market as NetSuite SuiteSuccess.  Oracle made false and misleading representations, which induced RSI into entering into the Oracle Contracts. RSI has pled detailed factual allegations in the FAC concerning the who, what, when, where, how and why the representations were false, and has met the heightened pleading standard required by Rule 9(b).  These actionable misrepresentations include:

- Oracle through Mr. Landsberg represented to RSI during the Zoom meetings on at least October 2, January 8 and 12, and February 18, and 24th, that Oracle had an existing solution that could provide the bulk of the functionality required by RSI (i.e. the functionality of Quickbooks Desktop Enterprise, ECI Spruce and Sage 100) "right out of the box", and what it did not have the Oracle Partners could provide.  These Zoom meetings were attended by RSI employees including Mr. Tarry and Tim Bratton, Mr. Joe Nolan, Mr. Keith Bell, and Mr. Chad Rohrbach. FAC ¶¶31, 32, 33, 36, 49.  No such solution existed and two years after contract execution the software had never gone live and the functionality was not delivered. FAC ¶2.

- Oracle through Mr. Landsberg on at least the January 8, January 12th, and January 20th Zoom meetings told the RSI team composed of Mr. Tarry and Tim Bratton, Mr. Nolan, Mr. Bell and Mr. Rohrbach that the NetSuite solution could do everything RSI asked for, and was a one stop software solution that would house the financial, eCommerce, WMS, POS, and EDI solutions that River Supply currently performed with multiple software vendors, all in one integrated solution. FAC ¶¶36, 38.  No such solution was ever delivered.  FAC ¶2.

- Mr. Landsberg and his colleagues represented that Oracle's solution had the desired Quickbooks Desktop Enterprise, Sage 100 and ECI Spruce features already built in and was fully capable of meeting RSI's needs, with only minor customizations. FAC ¶¶31, 33, 36. Oracle never delivered a working solution. FAC ¶2.

- Oracle through Mr. Landsberg at the January 8 and January 12th meetings promised Mr. Tarry and Tim Bratton, Mr. Nolan, Mr. Bell and Mr. Rohrbach that through NetSuite WMS, the inventory would be able to be tracked through multiple companies, including with locators to a specific point at RSI's facilities.  FAC ¶¶36, 75.  After two years the solution still didn't work and inventory could not be tracked. FAC ¶¶2, 69.

- Mr. Landsberg represented to Mr. Tarry and Tim Bratton, Mr. Nolan, Mr. Bell and Mr. Rohrbach at the January 8 and January 12th meetings that the software was able to grow with the company to incorporate additional locations and that the solution would be able to handle the seamless flow of the data from RSI Hardware's wholesaler to the NetSuite Software and into RSI's inventory. FAC ¶¶33, 36, 69, 75. Oracle was never able to get the software to go live let alone track the seamless flow of data. FAC ¶2.

- Oracle (Mr. Landsberg) represented that with one of its trusted Oracle partners, the SuiteSuccess solution would be able to automatically update inventory from RSI's

OPPOSITION TO MOTION TO DISMISS AND MOTION TO STRIKE          CASE NO. 3:23-cv-02981-LB

wholesaler to RSI's hardware store.  Oracle later recommended SPS to provide this functionality.  FAC ¶¶ 33, 37, 68, 72, 75.  Oracle and SPS were never able to get the inventory to automatically update as promised.  FAC ¶¶2, 3.

- Oracle through Mr. Landsberg represented that it could meet RSI's requirements that the solution could handle the job flow and the sales analytics and work seamlessly with the entire solution. FAC ¶33.  The solution never went live.  FAC ¶2.

- Oracle through Mr. Landsberg represented to RSI during Zoom meetings on at least October 2, 2020, January 8 and 12, 2021 and February 24, 2021, and otherwise, that Oracle had experience with retail companies such as RSI Hardware and had successfully implemented similar SaaS solutions for those NetSuite customers. FAC ¶¶ 31, 36, 47, 49, 51, 58, 62, 63, 70, 99, 114, 116, 138. The solution was never implemented and never went live.  FAC ¶2.

- Oracle through Mr. Landsberg and Mr. D'Amato represented that once the SuiteSuccess solution pricing was finalized prior to contract execution, it would be fixed price and "all in" and there would not be any price increases.  FAC ¶¶ 36, 49, 81, 91, 92, 122, 128.  This turned out not to be true, and Oracle proposed a change order increasing the contract price for functionality that was promised prior to contract execution. FAC ¶¶79, 81.

- Based on Oracle's extensive experience with similar customers, Oracle through Mr. Landsberg promised that RSI will be able to get to "go live" quickly and within 4 to 5 months of contract execution with the ERP portion of the implementation. FAC ¶¶4, 36, 46, 49.  The solution never went live.  FAC ¶2, 59, 60, 61, 65, 78, 81.

- At no time during the Zoom call on January 20th or any of the pre-contract meetings, did Mr. Landsberg disclose that RSI would need to manage or negotiate directly with the third-party Oracle Partners. Instead, Mr. Landsberg represented that Oracle would manage the project and any third-party partners they brought to the table, and that project management would be part of the implementation services provided by Oracle.  FAC ¶¶37, 47, 48, 58, 70, 71, 73, 122.  Oracle completely failed to manage the project and the project never went live.  FAC ¶¶2, 70, 71, 73.

- Oracle scheduled the demo meeting on the afternoon of February 18, 2021. Mr. Nolan, Mr. Tim and Mr. Tarry Bratton, Mr. Rohrbach and Mr. Jamison attended on behalf of RSI, and from Oracle Mr. Troy Landsberg, Mr. Damato, Mr. Gibson, Ms. Azoulay, Mr. Krajci, Mr. Tuzzo and Mr. Barbera attended the meeting. During the demo, all of the portions of the solution sought by RSI appeared to be successfully demonstrated. FAC. ¶¶46, 63.  Although Oracle represented that the system was then existing, it could not get it to work after two years of trying.  FAC ¶2.

- Mr. Landsberg represented at the February 18 demo that the existing NetSuite solution could combine all three companies financially and that Defendants could assist RSI with making the process improvements to its then current system. FAC ¶46. The system never went live and the three companies were never combined financially.  FAC ¶2.

- Mr. Landsberg represented at the February 18, demo that the ERP part of the project (Phase 1) would "go live" within 4 to 5 months of contract execution.  FAC ¶46.  Mr. Landsberg later followed up February 24th email and online meeting reiterating the "go live" promise. FAC ¶¶46, 49.  The solution never went live. FAC ¶2.

OPPOSITION TO MOTION TO DISMISS AND MOTION TO STRIKE                CASE NO. 3:23-cv-02981-LB

- During the February 18th meeting, Oracle's Mr. D'Amato made it clear that all of the features and functionality that RSI sought in the solution was included in the proposed pricing and there would be no other hidden costs, and that the price was fixed. The ultimate pricing was more than what was promised, and Oracle also sought to increase the price via change order. FAC ¶¶46, 49.
- Mr. Landsberg represented that the Oracle professional services team would act as the Project Manager and would coordinate the work of the third-party trusted Oracle Partners to ensure that the work was done in a timely fashion and that the project remained on track. FAC ¶¶37, 47, 48, 58, 70, 71, 73, 122. For the partner solutions, Oracle recommended Vend for POS, SPS Commerce for EDI, and Appficiency for Material Job Costing. FAC ¶¶45, 37, 63. Oracle failed to adequately manage the project, which never went live. FAC ¶2.
- Mr. Landsberg also represented that the recommended Oracle Partners were well known by Oracle and had worked successfully with Oracle on similar projects, for implementations for large retail customers like RSI.  FAC ¶¶47, 62, 63, 65, 68. RSI observed that after two years Oracle and its partners had still not delivered a working solution.  FAC ¶2.
- Mr. Landsberg claimed that Solupay, an Oracle payment solution partner had technology that worked "seamlessly" with the NetSuite solution.  FAC ¶¶46, 66. Later during contract performance Oracle disclosed that Solupay could not work with the NetSuite solution.  *Id.*
- Oracle next recommended Worldpay as the payment processor and claimed that it would absolutely work with the solution.  FAC ¶¶66, 81, 138. It was not long before Worldpay explained to RSI that its solution too would not work with NetSuite in contrast with Oracle's promises.  FAC ¶66.
- Referring to RSI's flow chart of required functionality, Mr. Landsberg in a February 19, 2023 email containing the revised pricing represented that "[t]he software costs now consist of all of the things that you outlined as needed…" FAC ¶48. Oracle later requested a change order at an additional price for functionality that had already been promised as being included in the solution.  FAC ¶75.
- In pre-contract discussions on at least February 18, 19 and 20 (as well as subsequent meetings), Oracle recommended Vend as the POS provider and represented that Vend's solution integrated "tightly" into NetSuite and could meet key needs of RSI including such things as automatic use of images, employee and other discount functionality, purchase orders, tax exemptions, and units of measure, among other things.  FAC ¶¶2, 26, 37, 43, 44-46, 63, 64, 114. It was only during the actual implementation that RSI learned that the solution could not provide the promised functionality.  FAC ¶¶64, 65, 67, 99, 114, 115.
- During the demo Vend confirmed that it could deliver all of the functionality that RSI required with its existing product. FAC ¶ 114.
- Oracle recommended SPS Commerce for the EDI portion of the implementation. Mr. Landsberg promised RSI in pre-contract discussions that the NetSuite solution would be able to exchange digital information and transactions with other businesses for greater accuracy and speed of communication and that SPS could integrate the EDI System in RSI's environment with NetSuite. FAC ¶¶2, 45, 46, 68-73. Mr. Landsberg represented to RSI that Oracle had worked successfully with SPS on complex retail clients similar to RSI and could do so again. FAC ¶¶68, 70.

The project never went live, and neither NetSuite nor SPS seemed familiar with working on projects involving large retailers. FAC ¶¶74, 75, 81.

- Mr. Landsberg of Oracle had represented to Mr. Tarry Bratton in precontract discussions on at least January 20, 2021 and February 18, 2021 that the product would seamlessly integrate with NetSuite just as it was working with RSI's then current solution, ECI Spruce, and could show inventory in the same way. FAC ¶¶33, 36, 51. Mr. Landsberg had represented that the data transfer would be automatic and update pricing, pictures, and product descriptions to be used for the ERP, POS, and eCommerce platform automatically. FAC ¶¶74, 75. Oracle was never able to deliver the promised functionality at the price quoted and demanded a change order instead.  FAC ¶¶2, 79.

As the detailed allegations above show, RSI has successfully pled the who, what, when, where, and how of the fraud with particularity, including why the statements were false.  The misrepresentations pled are not puffery or mere opinions about future events.  Instead, they are detailed allegations about specific misrepresentations concerning past or existing facts that Oracle made concerning existing functionality, the fixed price of the contract, Oracle's existing solution that would allow it to timely deliver, the past experience of Oracle and its partners with similar retail customers, and the other issues detailed above and in the FAC. Oracle's motion to dismiss for failure to plead fraud with particularity should be denied.

### 2.    RSI Has Adequately Pled Intent to Defraud

The heightened pleading standard for fraud does not apply to the elements of scienter, intent, and knowledge.  Fed. R. Civ. P. 9(b); *Odom v. Microsoft Corp*., 486 F.3d 541, 554 (9th Cir. 2007) ("While the factual circumstances of the fraud itself must be alleged with particularity, the state of mind - or scienter - of the defendants may be alleged generally."); *Scott v. Saraya, U.S. Inc.*, 22-cv-05232-WHO, 2023 U.S. Dist. LEXIS 97694, at *13 (N.D. Cal. June 5, 2023) (same). RSI has met this standard here, and the FAC states more than a mere formulaic recitation of the scienter element of a fraud claim.

RSI has alleged based on its own experience that an aggressive Oracle sales team led by Mr. Landsberg was willing to make whatever representations it took to lure RSI into signing up for Oracle's SuiteSuccess program.  FAC ¶¶30-50.  Oracle presented RSI with slick presentations purporting to show existing solution functionality.  But once the implementation began, RSI soon

7

learned that the touted functionality never existed at all, but was in the process of being developed. That is not a breach of contract; it is a fraud. Apparently, RSI's experience is not an outlier. The whistle-blower allegations of Mr. Daramola and the other Oracle customer lawsuits corroborate RSI's experience and provide detailed allegations of a sophisticated scheme where Oracle sales, implementation teams and Oracle management are all involved in selling Oracle customers technology that does not exist. FAC ¶¶2, 83, Ex. 1. Also, RSI has alleged facts that Mr. Landsberg and other Oracle employees misrepresented the capabilities of the software in order to induce RSI into entering into the Oracle Contracts so they could hit their quarter-end sales targets in order to secure commissions. FAC ¶¶48-50, 81. These, and other allegations in the FAC are enough to create a plausible inference that Mr. Landsberg and other Oracle employees had the requisite scienter to support a fraud claim.

### 3.    RSI Has Pled Justifiable Reliance

Under California law, reliance on a misrepresentation must be "justifiable". *OCM Principal Opportunities Fund, L.P. v. CIBC World Mkts. Corp*., 157 Cal. App. 4th 835, 856 (2007). The reasonableness of a plaintiff's reliance is judged by reference to the plaintiff's knowledge and experience, *id*., not by reference to the knowledge of a hypothetical, reasonable man. *Hartong v. Partake, Inc*., 266 Cal. App. 2d 942, 965 (1968). "Except in the rare case where the undisputed facts leave no room for a reasonable difference of opinion, the question of whether a plaintiff's reliance is reasonable is a question of fact." *OCM Principal*, 157 Cal. App. 4th at 864.

A plaintiff may reasonably rely on a misrepresentation even though it contradicts the terms of a contract he signed. *See Riverisland Cold Storage, Inc. v. Fresno-Madera Prod. Credit Ass'n*., 55 Cal. 4th 1169, 1180-82 (2013) (overruling prior authority and permitting the use of parole evidence contradicting the terms of an agreement to establish promissory fraud, thereby implying reasonable reliance). "Negligence on the part of the plaintiff in failing to discover the falsity of a statement is no defense [for the misrepresenting party] when the misrepresentation was intentional rather than negligent." *Hartong*, 266 Cal. App. 2d at 964 (quoting *Seeger v. Odell*, 18 Cal. 2d 409, 414 (1941)). "A plaintiff will be denied recovery only if his conduct is manifestly unreasonable in the light of his own intelligence or information. It must appear that he put faith in representations

OPPOSITION TO MOTION TO DISMISS AND MOTION TO STRIKE          CASE NO. 3:23-cv-02981-LB

that were 'preposterous' or "shown by facts within his observation to be so patently and obviously false that he must have closed his eyes to avoid discovery of the truth.'" *Hartong,* 266 Cal. App. 2d at 965.  In addition, "[a] plaintiff will be denied recovery only if his conduct is manifestly unreasonable in the light of his own intelligence or information." *Id.; accord OCM Principal*, 157 Cal. App. 4th at 865.

Here RSI has pled that it actually and justifiably relied on Oracle's misrepresentations in entering into the Oracle Agreements.  RSI is a family-owned architectural construction material supplier and hardware retailer located in Brogue, Pennsylvania.  FAC ¶14. RSI employees participated in multiple meetings prior to contract execution with an aggressive Oracle sales team, which made multiple misrepresentations concerning the NetSuite SuiteSuccess Solution and its capabilities (*see infra* at Section I.B.1).  RSI is not in the business of software development or providing ERP related solutions and relied on Oracle who consistently touted its expertise in this area.  FAC ¶¶93, 100, 108, 116.  In addition, Oracle represented that it and its recommended Oracle partners had experience working with large retail stores such as RSI Hardware, successfully delivering similar solutions and functionality.  *Id.*  RSI had no knowledge itself of the software, but relied on Oracle's expertise and superior knowledge that it could configure and implement the software.  *Id.*  In fact, Judge Tigar of this court in another NetSuite related case, *Kentwool Co. v. Netsuite, Inc*., No. 14-cv-05264-JST (N.D. Cal. Feb. 18, 2015) has already found that similar allegations involving a failed NetSuite project were sufficient to plead justifiable reliance.

### 4.    The Integration Clauses Do Not Negate Justifiable Reliance

In an attempt to defeat RSI's fraud-based claims, Oracle attacks RSI's Complaint alleging that RSI cannot plead actual and justifiable reliance due to the integration clauses of the SSA and Fixed Price SOW, which RSI is bound by.  However, as this Court has recognized in another NetSuite related case, the California Supreme Court has ruled in *Riverisland Cold Storage*, *Inc. v. Fresno-Madera Prod. Credit Ass'n*, 55 Cal. 4th 1169 (2013) that the parol-evidence rule does not bar the fraud claims, even where the agreement is integrated.  *Grouse River Outfitters Ltd. v. NetSuite, Inc.*, No. 16-cv-02954-LB, 2016 U.S. Dist. LEXIS 141478, at *9-10

9

(N.D. Cal. Oct. 12, 2016).

Ignoring *Riverisland,* Oracle cites an unpublished[2] and factually distinguishable case and then next argues that RSI's tort-based claims must be dismissed because RSI negligently failed to read the SSA and the PS Terms and that the integration clauses of those agreements make pleading justifiable reliance impossible as a matter of law.  *Rosenthal v. Great W. Fin. Secs. Corp.*, 14 Cal. 4th 394, 419 (1996) (negligent failure to acquaint oneself with the contents of a written agreement precludes a finding that the contract is void for fraud in the execution).  *See* Defendants' Motion to Dismiss and to Strike Plaintiff's FAC ("Oracle MTD") at 18:9-24.  But Oracle is wrong here again.  In fact, Judge Tigar of this Court has already rejected the exact same argument in another Oracle/NetSuite case, finding that *Rosenthal* did not apply. *Kentwool,* 2015 U.S. Dist. LEXIS 19982, at *16-17.  Judge Tigar ruled that the reasoning of *Rosenthal* and similar cases were inapplicable as those "cases do not address situations in which plaintiffs, like Kentwool, attack the validity of the contract" and that Kentwool did not seek to enforce promises that ran counter to the agreement and instead involved claims concerning "misrepresentations concerning the functionality of the ERP software NetSuite agreed to provide and NetSuite's ability to implement the software and correct problems as they arose — statements that are consistent with the agreements contained in the contract." *Id.* at *17.  Judge Tigar expressly found that allegations almost identical to those pled by RSI here were sufficient to state a claim.  *Id.* at *17-18; FAC ¶¶93, 100, 108, 116.

Moreover, RSI was not negligent.  Instead, Oracle was intentionally deceptive and carefully constructed the contract documents so as to not give conspicuous notice of the SSA to RSI or its other prospective customers.  RSI did not read the SSA because it did not see the SSA due to the disguised hyperlink, which is just as Oracle intended, and part of Oracle's overarching

---

[2] Relying on *Mackey v. Ocwen Loan Servicing, LLC*, No. F074094, 2018 WL 2276860, at *3 (Cal. Ct. App. May 18, 2018), Oracle attempts to argue that because RSI did not read the SSA or the PS Terms, it cannot plead justifiable reliance.  *Mackey* is unpublished and Oracle's argument based on this authority should be rejected.  Also, *Mackey* is distinguishable because in that case the plaintiff did not allege that "she was unable to read" the agreement "or that defendant somehow prevented her from reading it." *Id.* at *3.  Here, RSI has alleged it did not see the SSA, which was contained in a disguised hyperlink and buried on Oracle's confusing website.

OPPOSITION TO MOTION TO DISMISS AND MOTION TO STRIKE          CASE NO. 3:23-cv-02981-LB

TACTICAL LAW GROUP LLP
4 EMBARCADERO CENTER
SUITE 1400
SAN FRANCISCO, CA 94111

illegal scheme and unfair business practice.  FAC ¶¶6, 55.

### 5.  RSI Has Alleged Negligent Misrepresentation with Particularity

Oracle argues that RSI's fourth claim for negligent misrepresentation impermissibly lumps Oracle, Vend and Lightspeed together with no differentiation between the allegations against the Defendants.  *See* Oracle MTD at 19:8-15. Nothing could be further from the truth.  In fact, Oracle glaringly fails to acknowledge the specific allegations against each Defendant in both the claim and in previous allegations expressly incorporated by reference into the claim.  FAC ¶113.   RSI is clear that this negligent misrepresentation claim is based on Oracle and Vend's[3] representations that Vend's solution could meet RSI's requirements for a POS system, and the purported demonstration of this technology at the meeting on February 18, 2021.  FAC ¶¶63, 99, 100, 101. Oracle also represented that Vend's contract would be fixed price when it was not.  FAC ¶81.

With regard to Oracle, the FAC alleges that Mr. Landsberg represented that Oracle had worked with Vend on similar retail projects and that Vend could deliver the POS part of the solution and would even provide a demo of the required functionality.  FAC ¶¶37, 43, 44-46, 63. "Mr. Landsberg represented to RSI that Vend integrated tightly into Oracle's ERP Product and that Oracle and Vend had worked on numerous successful implementations for retail customers such as RSI." FAC at ¶¶99, 114.  "On February 18, 2021 Oracle arranged for Vend to provide an online demo of its product. During that demo, the product appeared to have all of the functionality that had been promised by Oracle and that RSI required. In reliance on the representations that Vend's solution met RSI's requirements and Oracle's recommendation of Vend, and after learning from Mr. Landsberg that the two companies had successfully worked together on similar complex retail and other projects in the past, RSI agreed to select Vend to handle the POS portion of the project." FAC ¶63.  During contract performance Oracle later conceded that Vend could not deliver the promised functionality and recommended Lightspeed instead.  FAC ¶64.

The FAC also contains allegations and misrepresentations specific to Vend and distinct from Oracle's misrepresentations.  For example, RSI alleges that "[d]uring the demo Vend

TACTICAL LAW GROUP LLP
4 EMBARCADERO CENTER
SUITE 1400
SAN FRANCISCO, CA  94111

[3] RSI has alleged that Lightspeed acquired Vend (FAC ¶18) and Lightspeed now steps into the shoes of Vend and is liable for Vend's misrepresentations.

11
OPPOSITION TO MOTION TO DISMISS AND MOTION TO STRIKE         CASE NO. 3:23-cv-02981-LB

confirmed that it could deliver all of the functionality that RSI required with its existing product."
FAC ¶114.  "Vend … agreed under OIA's [sic] installation plan to install and integrate a
functioning point of sale and inventory tracking system within RSI's existing NetSuite
environment to facilitate transactions and track inventory as it was and currently is advertised on
the parties' websites." FAC ¶ 26.  During contract performance Vend failed to deliver the
promised functionality, but RSI hoped that Vend's acquisition by Lightspeed would fix the issue.
FAC ¶65.  However, by the fall of 2022 Vend and its parent Lightspeed were forced to concede
that the functionality did not exist and likely could not be developed until sometime later in 2023
if ever.  *Id*.  Oracle's argument should be rejected.

### C.      The Economic Loss Rule Does Not Bar RSI's Tort Claims

The economic loss rule does not bar RSI's tort-based claims as pled in RSI's First
through Fourth Causes of Action.  Generally speaking, the economic loss rule requires a
contracting party "to recover in contract for purely economic loss due to disappointed
expectations, unless he can demonstrate harm above and beyond a broken contractual promise."
*Robinson Helicopter Co. v. Dana Corp*., 34 Cal. 4th 979, 988 (2004).  California state and
federal courts have consistently held that the rule does not apply to fraudulent inducement
claims, such as the ones asserted here, as those claims are above and beyond the broken
promises.  *White v. FCA US LLC*, 22-cv-00954-BLF, 2022 U.S. Dist. LEXIS 146604, at *13
(N.D. Cal. Aug. 16, 2022) ("Properly pled, claims for fraudulent inducement fall under their own
"well-recognized exception to the economic loss rule'"). *Las Palmas Associates v. Las Palmas
Center Associates*, 235 Cal. App. 3d 1220, 1238 (1991) ("no public policy is served by
permitting a party who never intended to fulfill his obligations to fraudulently induce another to
enter into an agreement").

RSI has successfully alleged that Oracle fraudulently induced it into the Oracle Contracts,
and the economic loss rule therefore does not apply.  The FAC alleges that Oracle engaged in a
fraudulent scheme to sell a product that did not exist (¶2, 87), misrepresented the product's
capabilities (¶¶9, 31-33, 36, 38, 49, 92), promised a fixed price with no intention of delivering at
that price and in the timeframe promised (¶¶46, 48, 49,  92), represented that its NetSuite

OPPOSITION TO MOTION TO DISMISS AND MOTION TO STRIKE          CASE NO. 3:23-cv-02981-LB

solution could do everything that RSI required (¶¶38, 44, 46, 49, 92), promised that it had

worked with Vend, SPS and other partners to successfully deliver a retail solution (¶¶41, 44, 47),

promised certain warehouse functionality, including that the data transfer would be automatic

and update pricing, pictures, and product descriptions to be used for the ERP, POS, and

eCommerce platform automatically, (¶¶74, 75), and other misrepresentations as detailed in the

FAC.  RSI has alleged that Oracle made promises in order to induce RSI to enter into the

contract and that Oracle made these promises knowing that it would not perform as promised,

and instead would seek to inflate the contract price with expensive change orders.  FAC ¶2.

Additionally, RSI has alleged that Oracle knew all along that the solution would not "go live"

within 4 or 5 months and that it would deploy escalation teams to hold RSI at bay, while it

worked on developing the solution.  *Las Palmas Associates*, 235 Cal. App. 3d at 1238("A

promise to do something necessarily implies the *intention to perform,* and, where such an

intention is absent, there is an implied misrepresentation of fact, which is actionable fraud."); *see*

*also* Cal. Civ. Code § 1710(4).

In fact, RSI's experience with Oracle mirrors the facts that former Oracle employee Tayo

Daramola who worked at NetSuite alleged in his whistleblower complaint, which is attached as

Exhibit 1 to the FAC.  *Manzarek v. St. Paul Fire & Marine Ins. Co.*, 519 F.3d 1025, 1030 (9th

Cir. 2008) (when ruling on a motion to dismiss, court may consider only allegations contained in

the pleadings, as wells as exhibits attached to the complaint). In his conspiracy complaint[4], Mr.

Daramola detailed an Oracle conspiracy to intentionally misrepresent to prospective customers

that Oracle had a fully developed, integrated system for an online campus bookstore that could

be customized and would be ready to "go live" quickly. FAC, Ex. 1 ¶¶100-103.  However,

according Daramola, no such integrated system existed, and Oracle instead extracted

subscription payments from university customers, all the while stalling the "go live" while

continuing to pocket the money while it frantically worked to develop the solution that it had

promised already existed. FAC, Ex. 1 ¶¶101-109.  The facts pleaded in the 2022 amended

---

[4] Although the Daramola Complaint was dismissed on jurisdictional grounds, the court did
not rule on the merits and the case is currently on appeal.

complaint further highlight an alleged pattern and practice under which Oracle promised to customize a non-existent but purportedly integrated cloud system for NetSuite customers, then used escalation teams to hold off customers who were making subscription payments for the product and receiving nothing in return. FAC, Ex. 1 ¶¶115-126.  Just like RSI, Daramola further alleged that Oracle used confusing and hidden agreements to further the fraudulent scheme. FAC, Ex. 1 ¶¶106-109. According to the complaint, project managers like Daramola, and "escalation teams" were directed to further mislead customers about the lack of development for the system the customer had supposedly acquired, by for example, blaming delivery delays on the customers' "unforeseen customization requests," extracting change orders for such "customizations," then requiring customers to pay more while buying Oracle more time to deliver a functioning ERP product. FAC, Ex. 1 ¶¶117-127.  This is exactly the playbook Oracle deployed against RSI in this case.

Oracle tries to argue that the economic loss rule applies to bar RSI's claims because some (but not all) of its allegations of fraud in the inducement also appear in its claim for breach of contract. Oracle MTD at 8:24-9:12.  But that argument is a red herring and misses the point as the above authorities show.  RSI has pled detailed allegations concerning Oracle's fraud in the inducement, and the economic loss rule does not apply.  Oracle did not enter into the contracts with RSI in good faith with the intention to deliver on its promises.  Instead, just the opposite. Oracle's motion to dismiss should be denied.

**D.      The Oracle Contracts are Unconscionable**

RSI has adequately set forth allegations to support its claim that the Oracle Contracts are unconscionable.  California law has long recognized the doctrine of unconscionability, which can be applied to provisions of the contract such as limiting the types of claims and damages available to RSI.  *See A & M Produce Co. v. FMC Corp.,* 135 Cal. App. 3d 473, 484 (1982) (affirming trial court decision that limitation of damages and waiver of warranty was unconscionable). Accordingly, Defendant Oracle's motion to dismiss on the basis of the contractual waiver should

be denied.[5]

"[U]nconscionability has both a 'procedural' and a 'substantive' element." *A & M Produce Co.,* 135 Cal. App. 3d at 486;  *In re: Yahoo! Inc. Customer Data Sec. Breach Litig.,* 313 F. Supp. 3d 1113, 1136 (N.D. Cal. 2018) (same).  "California courts apply a sliding scale analysis in making this determination: the more substantively oppressive the contract term, the less evidence of procedural unconscionability is required to come to the conclusion that the term is unenforceable, and vice versa." *Pokorny v. Quixtar, Inc.,* 601 F.3d 987, 996 (9th Cir. 2010) (citations and internal quotation marks omitted).  Here, the allegations of the FAC are sufficient to allege both procedural and substantive unconscionability.

### 1.    The FAC Adequately Alleges Procedural Unconscionability

Procedural unconscionability "focuses on the factors of surprise and oppression in the contracting process, including whether the contract was one drafted by the stronger party and whether the weaker party had an opportunity to negotiate." *Pokorny,* 601 F.3d at 996. "'Oppression' arises from an inequality of bargaining power which results in no real negotiation and 'an absence of meaningful choice.'  . . . 'Surprise' involves the extent to which the supposedly agreed-upon terms of the bargain are hidden in a prolix printed form drafted by the party seeking to enforce the disputed terms." *A & M Produce Co.*, 135 Cal. App. 3d at 486.

With regard to Oracle's presentation of the contract related documents for execution, the FAC alleges the contours of Oracle's fraudulent scheme as applied to RSI and others:

> Once the customer is hooked and agrees to purchase NetSuite's SuiteSuccess ERP Solution, Oracle presents them with a complex set of contract documents via DocuSign, which contain hidden and confusing agreements that are not adequately called out by

TACTICAL LAW GROUP LLP
4 EMBARCADERO CENTER
SUITE 1400
SAN FRANCISCO, CA 94111

---

[5] Oracle bases its argument on a number of cases that do not address the issue of unconscionability whatsoever.  *See, e.g.,* Oracle's MTD at 9:25-10:10 (*citing Circle Click Media LLC v. Regus Mgmt. Group LLC* (N.D.Cal. Jan. 3, 2013, No. 12-04000 SC) 2013 U.S.Dist.LEXIS 1604, at *31-32; *White Knight Yacht, LLC v. Certain Lloyds at Lloyd's London & Other London Mkt. Insurers* (S.D.Cal. 2019) 407 F. Supp. 3d 931, 943.  Indeed, in *White Knight Yacht LLC*, the court opined that "[the] forum selection clause is not unenforceable merely because parties have unequal bargaining power so long as the clause was reasonably communicated to the party or the party could have learned of its existence. . ." 407 F. Supp. 3d at 945.  Here, there are allegations, as set forth below, that Oracle did not reasonably communicate the contract, but instead the provisions were purposefully obscured so as to create unconscionability.

OPPOSITION TO MOTION TO DISMISS AND MOTION TO STRIKE          CASE NO. 3:23-cv-02981-LB

Oracle, and which contradict Oracle's previous representations and promises. Many customers, including RSI, are completely unaware of Oracle's Subscription Services Agreement ("SSA"), which is contained in a disguised hyperlink, on the Estimate Form. This agreement is not sent as an executable PDF, but rather is cleverly packaged and disguised so as to be completely missed by the typical Oracle small or medium sized business customer when executing the Estimate Form via a DocuSign link. The SSA is presented to the Oracle customer through a hyperlink at the back of the simple Estimate Form. However, the hyperlink is not in bold font or in a different color font so as to emphasize or draw attention to the link. Rather just the opposite. Oracle does not require the customer to click on or review the link to the SSA in order to execute the Estimate Form via DocuSign. In fact, the prospective customer would not know the Estimate Form contained a hyperlink unless it hovered a cursor over the link. In addition, clicking on the hyperlink does not result in the customer being taken directly to the SSA, but instead the customer lands on a page of the Oracle website where it is presented with a confusing menu of different types of agreements. Even if the customer knew which of the many agreements it was looking for, it would take at least two additional clicks to get to that agreement.

FAC ¶ 6; *see also* FAC ¶ 55. These allegations are more than sufficient to establish both surprise and oppression as is required for procedural unconscionability. Indeed, a "disguised" hyperlink never mentioned during negotiations that does not actually provide a proper link to the terms by which it purports to apply provides a quintessential example of "surprise." Moreover, the allegations of the FAC are sufficient for a finding that Oracle's agreement was a contract of adhesion. FAC ¶ 52 ("the Oracle team made it clear that the documents were standard and could not be revised at that point"); *see A&M Produce*, 135 Cal. App. 3d at 488.

Oracle does not address the procedural unconscionability, but merely argues that the "mere fact that a party needs to click on hyperlinks to access agreements that are incorporated by reference does not rise to the level of unconscionability, either substantive or procedural." Oracle MTD at 11:20-22. Not one of the cases discussed a hyperlink to substantive terms that was obscured and did not actually provide a proper link as is alleged here. *See, e.g.,* FAC ¶¶ 6, 55. Indeed, *Andre v. United States Bank, N.A.,* No. CV 20-4854-CBM-(PJWx)), 2021 U.S.Dist.LEXIS 154737 (C.D.Cal. May 20, 2021), does not even mention a hyperlink whatsoever. *See id.* at *9-11.

Moreover, the question of procedural unconscionability was not before the appellate court in *Tompkins v. 23andMe, Inc.,* 834 F.3d 1019 (9th Cir. 2016). Rather, the lower court found the arbitration agreement within the terms of services was procedurally unconscionable because, *inter*

16

1     *alia*, "even if customers locate and click a hyperlink to the TOS, they must hunt for the arbitration

2     provision. . ." *Tompkins v. 23andMe, Inc.,* No.: 5:13-CV-05682, 2014 U.S. Dist. LEXIS 88068, at

3     *55 (N.D. Cal. June 25, 2014); *see also Tompkins v. 23andMe, Inc.* (9th Cir. 2016) 834 F.3d 1019,

4     1026, fn. 2 ("The parties do not dispute the court's finding that the Terms of Service were

5     procedurally unconscionable, and thus we do not address that question.")

6          The only case in which a hyperlink was discussed in the context of unconscionability is

7     *Mohamed v. Uber Techs., Inc.*, 109 F. Supp. 3d 1185 (N.D. Cal. 2014), *affirmed in part, reversed*

8     *in part*, 848 F.3d 1201 (9ᵗʰ Cir. 2016), *cited at* Oracle's MTD at 12:8-11.  However, in *Mohamed*,

9     the hyperlink appeared with a working link once the Uber driver opened the Uber application,

10    which included with a statement that "YOU MUST AGREE TO ALL THE CONTRACTS

11    BELOW" with a click required of "Yes, I agree."  After clicking the link, there was a confirmation

12    in all caps that required the user to acknowledge they have reviewed and agreed to all contracts.

13    *Id.* at 1190-1191.  Thus, *Mohamed*'s facts are a far cry from the allegations set forth in the FAC.

14         Simply put, Oracle's argument misses the point.  It is not the "mere" fact of a hyperlink

15    that results in procedural unconscionability in this case.[6]  Rather, the FAC alleges that the

16    hyperlink was "hidden" in a manner that purposefully obfuscated the terms for RSI, which clearly

17    had unequal bargaining power compared to a software behemoth such as Oracle.  It was a

18    hyperlink raising terms never discussed during negotiations, which was hidden on a standardized

19    form, and that did not even actually work.  That is, like in *Tompkins*, even if RSI could "locate and

20    click" the hyperlink, it would still have had to "hunt" for the TOS upon which Oracle now relies.

21         Furthermore, the sliding scale of procedural unconscionability is even higher here where

22    RSI is a small business lacking in the sophisticated legal acumen of a giant like Oracle.  *See A&M*

23    *Produce*, 135 Cal. App. 3d at 489-90 ("[C]ourts have begun to recognize that experienced but

_____

[6] Nor is it the *solely* that RSI was not represented by counsel that is the basis of the claim
of unconscionability.  *See* Oracle MTD at 13:5-15, *citing Bishay v. Icon Aircraft, Inc.* No. 2:19-cv-
00178-KJM-AC, 2020 U.S. Dist. LEXIS 7939, (E.D. Cal. Jan. 15, 2020).  Indeed, in *Bishay* it was
the fact that plaintiff sought to rely *alone* on the lack of counsel.  *Id.*, at *8 ("Nor does he allege
any facts showing procedural unconscionability in the form of surprise, which is often
characterized by the supposedly agreed-upon term being hidden in a prolix printed form.")

TACTICAL LAW GROUP LLP
4 EMBARCADERO CENTER
SUITE 1400
SAN FRANCISCO, CA  94111

OPPOSITION TO MOTION TO DISMISS AND MOTION TO STRIKE          CASE NO. 3:23-cv-02981-LB

legally unsophisticated businessmen may be unfairly surprised by unconscionable contract terms"); *see also, e.g.,* FAC ¶ 52.  Indeed, as the *A&M* Court noted, "The burden should be on the party submitting [a standard contract] in printed form to show that the other party had knowledge of any unusual or unconscionable terms contained therein." *A&M Produce*, 135 Cal. App. 3d at 489-491.

### 2.    The FAC Adequately Alleges Substantive Unconscionability

Substantive unconscionability relates to the "fairness of the term in dispute" and "[t]he focus of the inquiry is whether the term is one-sided and will have an overly harsh effect on the disadvantaged party." *Pokorny,* 601 F.3d at 997. ("mutuality is the 'paramount' consideration when assessing substantive unconscionability.")  Again, Oracle here does not meaningfully address the component of substantive unconscionability, rather, it misconstrues the allegations of FAC claiming that it is simply the hyperlink that is alleged as the basis for unconscionability.

However, the allegations are that the substantive terms that Oracle worked so hard to hide from RSI included very one-sided provisions, including provisions that "effectively seek[] to absolve Oracle from any obligation to provide a working ERP solution," *i.e.*, the very basis of the agreement between the parties.  *See, e.g.,* FAC ¶ 8.  That is, the allegations set forth terms that are completely one-sided with no mutuality of obligation.  Such a broad, one-sided waiver is substantively unconscionable.  *See In re: Yahoo! Inc. Customer Data*, 313 F. Supp. 3d at 1137 (denying motion to dismiss, because "[u]nder the particular circumstances of this case, Plaintiffs have also made sufficient allegations to support substantive unconscionability. In particular, Plaintiffs claim that the limitations of liability are overly one-sided and bar any effective relief."); *see also A & M Produce Co.*, 135 Cal. App. 3d at 491-492.

As the FAC sets forth allegations sufficient for both procedural and substantive unconscionability, the motion to dismiss should be denied.

### E.    RSI's Other Claims are Valid and Should Not Be Dismissed

#### 1.    RSI Has Successfully Pled Claims for Breach of Contract and Warranty

1    RSI has pled contract and fraud-based claims in the alternative.  Fed. R. Civ. P 8(d)(2) &

2    (3).  A cause of action for breach of contract requires: (1) the existence of the contract; (2)

3    plaintiff's performance or excuse for nonperformance; (3) defendant's breach; and (4) the resulting

4    damages to the plaintiff. *See e.g*., *Oasis West Realty, LLC v. Goldman*, 51 Cal. 4th 811, 821

5    (2011). To plead a claim for breach of warranty RSI must allege (1) the exact terms of the

6    warranty; (2) reasonable reliance thereon; and (3) a breach of the warranty which proximately

7    caused RSI's injury.  *Nabors v. Google, Inc*., No. 5:10-CV-03897 EJD (PSG), 2011 U.S. Dist.

8    LEXIS 97924, at *9 (N.D. Cal. Aug. 30, 2011).  RSI's FAC successfully alleges these basic

9    elements against Oracle for both claims.

10    RSI attaches to the FAC the contracts that form the operative agreements[7] between RSI

11    and Oracle. *See* FAC ¶122; Exs. 2-9 ("Oracle Contracts"). RSI performed under the contracts by

12    paying for an ERP implementation and associated services, including project management,

13    specific set-up and configuration operations, data migration, user acceptance training, post go-live

14    support, and continued support described in detail by the Agreement. *See* FAC ¶123; Ex. 6; *see*

15    *also* Exs. 2-5, 7-9.  The Agreement clearly sets-out Oracle's obligations for implementing an ERP

16    solution. *See* FAC ¶122; *see also* FAC Exs. 2-3; Ex. 4, p. 3 (ERP Implementation -- $75,000); Ex.

17    6 (Fixed Price Statement of Work, 2. Description of Services); *see also* Exs. 7-9. Oracle did not

18    perform under the Agreement, and the ERP solution never went live. *See* FAC ¶ 124; Exs. 2-9.

19    Specifically, Oracle did not fulfill its obligations even after receiving large sums of money from

20    RSI. *Id*. RSI was harmed by this material breach of the Agreement as set out specifically in the

21    FAC. *See* FAC ¶125.

22    Oracle's conduct detailed throughout the FAC is also a breach of its express warranty to

23    the extent the SSA applies.  The Services Warranty of Paragraph 9 of the SSA states that Oracle

24    "will perform (i) the Cloud Service using commercially reasonable care and skill in all material

25    respects … and (ii) any Professional Services and Support Services in a professional manner

26    consistent with industry standards". FAC ¶130. The FAC clearly states that Oracle did not perform

27    ⁷ As set forth more fully herein and in the FAC, RSI disputes that it is bound by the SSA or
28    PS Terms for the reasons noted.

the services using commercially reasonable care and skill. FAC ¶¶132, 133, 124; *see also* ¶¶58-81. As alleged in the FAC, RSI provided Oracle many breach notices and opportunities to cure. *See e.g.*, FAC ¶60 ("Oracle … blew past one 'go live' date after another, including, August 2021, June 1, 2022, October 1, 2022, November 1, 2022 and January 1, 2023. RSI pointed out Oracle's failures in both oral and written communications throughout calendar year 2021 and 2022. Unfortunately, Oracle failed to correct the problems and never delivered a working solution."). RSI also provided notice of breach and opportunity to cure on November 14, 2022, and the cure period ended on December 14, 2022. *See* FAC ¶¶ 131, 10, 61, and Ex. 10.  The FAC states a plausible claim and provides sufficient notice to Oracle regarding the breach of Services Warranty of the SSA.

To the extent the SSA is deemed unenforceable, RSI has also stated a claim for breach of express warranties made by Oracle outside of the SSA. FAC ¶¶128, 129 ("Oracle through Mr. Landsberg, Mr. D'Amato and others, expressly warranted that their ERP Product would have all of the features and functionality requested by RSI and promised by Oracle"). RSI relied on those warranties and the FAC expressly alleges a breach of those express warranties made by Oracle. FAC ¶¶132, 133, 124; *see also* ¶¶58-81. "A party may plead alternative theories of liability, even if those theories are inconsistent or independently sufficient." *Cellars v. Pacific Coast Packaging, Inc.*, 189 F.R.D. 575, 578 (N.D. Cal. Dec. 23, 1999) (*citing* F.R.C.P. 8(d)(2)). RSI's breach of warranty theories and claims are allowed and provide sufficient notice at the pleading stage of this case.

**2.      RSI Has Stated a Claim for Breach of the Implied Covenant**

It is well settled that the implied covenant of good faith and fair dealing is present in all contracts. *See, e.g., Marsu B.V. v. Walt Disney Co.*, 185 F.3d 932, 937 (9th Cir. 1999).  The plaintiff must show that defendant "fail[ed] or refuse[d] to discharge contractual responsibilities, prompted not by an honest mistake, bad judgment or negligence but rather by a conscious and deliberate act, which unfairly frustrates the agreed common purposes and disappoints the reasonable expectations of the other party." *Careau & Co. v. Security Pacific Business Credit,*

20

*Inc.*, 222 Cal. App. 3d 1371, 1395 (1990).  It is "something beyond breach of the contractual duty itself'".  *Id.* at 1394.  RSI's claim for breach of the covenant does not simply allege the same facts as its claim for breach of contract.  Instead, multiple paragraphs including paragraph 2, 9, 87, 138 of the FAC alleges conduct that frustrated RSI's rights to benefit from the contract, including "Oracle made promises and other representations to Plaintiff both before and after contract execution about the capabilities of their ERP Product, which they knew were false" and "made those representations without any intent to perform."  In short, RSI's implied covenant claim alleges that Oracle never intended to perform its contractual obligations.  These allegations are distinct from the breach of contract claims.  Accordingly, Oracle's motion to dismiss the implied covenant claim should be denied.

### 3.     RSI Has Adequately Stated a California Penal Code § 496 Claim

Oracle has also moved to dismiss RSI's California Penal Code § 496 cause of action for failure to state a claim.  In *Siry v. Farkhondehpour*, 13 Cal. 5th 333, 361 (2022), the California Supreme Court ruled that in some circumstances private commercial litigants could state a claim for theft under Penal Code Section 496 in commercial disputes.  Citing cases that predate *Siry*, Oracle argues that the statute does not apply to Oracle's conduct as "[a] cause of action for civil theft cannot lie where a plaintiff receives legitimate services based on mutual agreement to pay for those services." *Alvarez v. Adtalem Educ. Grp., Inc.*, No. 19-CV-04079-JSW, 2019 WL 13065378, at *5 (N.D. Cal. Dec. 16, 2019); *see also AdTrader, Inc. v. Google LLC*, No. 17-CV-07082-BLF, 2018 WL 3428525, at *9 (N.D. Cal. July 13, 2018).  Oracle MTD at 22:9-12.  However, what Oracle conveniently forgets is that RSI has paid Oracle and its business partners almost $170,000 and has devoted thousands of internal hours in the project over the course of two entire years and has not received anything of value and the promised solution with its related services has never gone live. FAC ¶2.  Thus, RSI has never received "legitimate services" as Oracle contends.   RSI has demanded that Oracle refund the monies paid to Oracle and its partners, but Oracle has refused.  FAC ¶146. RSI has also alleged that Oracle and its business

OPPOSITION TO MOTION TO DISMISS AND MOTION TO STRIKE          CASE NO. 3:23-cv-02981-LB

partners knew at the time of contracting that the solution did not exist and they could not develop it for the price promised, but did so anyway to lure RSI into the contract.  FAC ¶2.  Thus, this is not a simple commercial default as Oracle would like the Court to believe, but as RSI's and Mr. Daramola's Complaint makes clear, a wide-ranging unfair trade practice and conspiracy to which RSI fell victim. FAC, Ex. 1, ¶136.

> "All participants in the […] scheme knew that the system being demonstrated to the customer could not be delivered to that customer, that the module and services sold would not achieve that functionality for the customer, that the product could not be delivered as demonstrated, but with the intent to gain, not just the original sales revenue, but the continued additional revenue that would become necessary thereafter and could be implemented through "change orders," whereby Oracle could then try and develop the functionality of the product already sold." FAC, Ex. 1 ¶136.

The "participants" that Mr. Daramola describes are members of the NetSuite sales team and Oracle management.  If such actions are not criminal, then RSI does not know what is.  Accepting RSI's allegations in the FAC as true for purposes of this motion as the Court must, RSI has stated a claim for violation of the statute and the motion should be denied.

### 4.    RSI Has Adequately Stated a UCL Claim

Oracle's argument that RSI has failed to state a UCL claim should also be rejected.  First, the case law does not support dismissing a UCL claim based on no adequate remedy of law at the pleading stage.[8]  Second, Oracle conveniently ignores that RSI has requested equitable relief in the form of an injunction.  FAC ¶153.  Thus, there is no adequate remedy at law and RSI proceeds in equity.  Third, Oracle incorrectly asserts that the request for restitution in the UCL claim is the same as the compensatory damages sought elsewhere in the FAC.  It is not, and California courts

TACTICAL LAW GROUP LLP
4 EMBARCADERO CENTER
SUITE 1400
SAN FRANCISCO, CA  94111

---

[8] Oracle relies on cases that were decided on summary judgment rather than at the pleading stage, or years into the litigation, to support its argument that "[a] plaintiff seeking equitable relief under the UCL must demonstrate the inadequacy of a remedy at law, or the court must dismiss the claim."  Oracle is wrong and recent decisions have found dismissal at the pleading stage inappropriate.  *See Carroll v. Myriad Genetics, Inc.*, No.: 4:22-CV-00739-YGR, 2022 U.S. Dist. LEXIS 207129, at *15 (N.D. Cal. November 9, 2022)("*Sonner* does not address what a plaintiff must allege at the pleading stage in order to proceed on her equitable claims, nor . . . does the federal common law *Sonner* directs us to apply. This Court will not deprive plaintiffs of their claims without clearer direction from a higher court."); *Beligan v. Mercedes-Benz USA, LLC*, No. SA CV 22-02035-DFM, 2023 U.S. Dist. LEXIS 76645, at *14 (C.D. Cal. February 15, 2023)(same).

OPPOSITION TO MOTION TO DISMISS AND MOTION TO STRIKE          CASE NO. 3:23-cv-02981-LB

have recognized the distinction.  "[T]here is a fundamental distinction between restitution, which is allowed [under §17200], and damages, which are not. The term 'damages' describes 'a payment made to compensate a party for injuries suffered,' whereas 'restitution' takes place when '[t]he defendant is asked to return something he wrongfully received; he is not asked to compensate the plaintiff for injury suffered as a result of his conduct.'" *Benn v. Allstate Ins. Co.,* 569 F. Supp. 3d 1029, 1036 (C.D. Cal. 2021). Here, RSI paid funds to defendants in exchange for a fully functioning ERP product, which it did not receive, and is entitled to the return of said funds.  This is permissible relief, and the motion to dismiss the UCL claim should be denied.

**5.    The Declaratory Relief Claim Is Not Duplicative**

RSI's Eleventh Cause of Action seeks very specific declaratory relief that the Oracle Contract and/or certain provisions of the SSA are unenforceable. FAC ¶¶ 157-159.  RSI's claim cannot be duplicative of its breach of contract claim because the request for relief to nullify the Oracle Contracts is completely distinct from its pleading, in the alternative, that the contract was breached. Oracle's argument that this cause of action is duplicative is nonsensical and unsupported. *See* Oracle MTD at 24:16-25:9 (Oracle arguing, "determinations of a breach of contract claim will resolve any question regarding interpretation of the contract, there is no need for declaratory relief, and dismissal of a companion declaratory relief claim is appropriate.") (citations omitted). RSI's request for declaratory relief is not only related to interpreting a contract; it is a request to nullify the contract. The request for declaratory relief is not duplicative. *MDOF Wells, LLC v. Total Property Solutions, Inc.*, No. 22-cv-03631-TSH, 2022 WL 18456822, at *6 (N.D. Cal. Dec. 12, 2022) ("Because the two claims seek different forms of relief, MDOF's request for declaratory relief is not duplicative of its breach of contract claim."); *see also StreamCast Networks, Inc. v. IBIS LLC*, No. CV 05-04239 MMM (Ex), 2006 WL 5720345, at *4 (C.D. Cal May 2, 2006).

**F.  Oracle's Motion to Strike Should be Denied**

Motions to strike under Rule 12(f) are viewed by courts with disfavor.  *Armstead v. City of Los Angeles*, 66 F. Supp. 3d 1254, 1271 (C.D. Cal. 2014).  In ruling on a motion to strike, courts "must view the pleading under attack in the light most favorable to the pleader, treating as

OPPOSITION TO MOTION TO DISMISS AND MOTION TO STRIKE          CASE NO. 3:23-cv-02981-LB

1  admitted all material facts alleged and all reasonable presumptions that can be drawn

2  therefrom." *Rosales v. Citibank*, 133 F. Supp. 2d 1177, 1180 (N.D. Cal. 2001)(citation omitted).

3  Courts must further assume that all general allegations "embrace whatever specific facts might be

4  necessary to support them."  *Peloza v. Capistrano Unified School Dist.* 37 F.3d 517, 521 (9th Cir.

5  1994).

6       Oracle contends that Sections 10.1 and 10.2 of the SSA precludes RSI from recovering

7  consequential damages and moves to strike the requested damages[9] in FAC ¶125 and in the

8  Prayer.  However, a prayer for consequential damages does not constitute either an "insufficient

9  defense" nor a "redundant, immaterial, impertinent or scandalous" matter under Rule 12(f).  *See*

10  *Whittlestone, Inc. v. Handi-Craft Co.,* 618 F.3d 970, 973-974 (9th Cir. 2010).  Accordingly, Rule

11  12(f) does not authorize a court to strike such a claim for damages as a matter of law. *Id.* at 974-

12  975.  To the extent that Oracle is relying on its Limitation of Liability clause, that provision is

13  unenforceable as we have explained previously.

14       Oracle's contention that RSI's mention of Oracle offering a discount if RSI renewed the

15  subscription for a second year is not precluded by the settlement privilege and the motion to strike

16  should be denied.  *See* Oracle's MTD at 1:14; 6:15-16; 20 fn. 4.  In Paragraph 59 of the FAC, RSI

17  alleges that Oracle made a commercial concession and offered a credit if RSI would renew for

18  another year.  Hoping that Oracle could get its act together and based on Oracle's promises that it

19  could do so, RSI accepted the credit and renewed.

20       While Rule 408(a) prohibits the introduction of evidence to "prove or disprove the validity

21  or amount of a disputed claim or to impeach by a prior inconsistent statement or a contradiction,"

22  it does not bar such evidence when offered "for another purpose" and the Rule provides examples.

23  Fed. R. Evid. 408 (b); *see also United States v. Technic Servs., Inc.*, 314 F.3d 1031, 1045 (9th Cir.

24  2002)(*overruled in part on other grounds by* 593 F.3d 1135 (9th Cir. 2010)) (holding that evidence

25  from settlement negotiations was admissible to prove "obstruction of the EPA's investigation").

26  "The use of the phrase 'such as' [in Rule 408] implies that the ensuing list is not exhaustive but is

TACTICAL LAW GROUP LLP
4 EMBARCADERO CENTER
SUITE 1400
SAN FRANCISCO, CA 94111

27      [9] In its brief, Oracle claims that the Complaint seeks $5 million in damages.  No such

28  amount is pled anywhere in the FAC.

24

only illustrative." *United States v. Technic Servs., Inc.,* 314 F.3d at 1045.

Here, the reference in paragraph 59 of the FAC to Oracle's prelitigation offer of a one-time discount if RSI renewed it subscription is admissible to prove that Oracle committed promissory fraud by renewing its assertion that it could deliver a functioning product and sweetening the deal with a discount in order to induce RSI to pay more money and commit to a second year.  The fact that Oracle then took the opportunistic move to demand a release for the payment goes to Oracle's state of mind, and not the value of any claim.  Also, the credit may have been offered to frustrate RSI's ultimate recovery under the unconscionable Limitation of Liability clause, in order to provide a disincentive to litigate, as the payment in the year prior to the litigation would be so low. Federal Rule of Evidence 408 does not bar the pleading of such facts under these circumstances.

## **CONCLUSION**

As demonstrated above, RSI's Complaint and all of its causes of action are properly pled and Oracle's motion to dismiss should be denied.  However, in the unlikely event that the Court would grant all or part of Oracle's motion, RSI respectfully requests that it be given leave to amend.

DATED: August 2, 2023                              TACTICAL LAW GROUP LLP


By:   /s/ Pamela K. Fulmer
      Pamela K. Fulmer
      Attorneys for Plaintiff
      RIVER SUPPLY, INC.

TACTICAL LAW GROUP LLP
4 EMBARCADERO CENTER
SUITE 1400
SAN FRANCISCO, CA  94111

OPPOSITION TO MOTION TO DISMISS AND MOTION TO STRIKE                    CASE NO. 3:23-cv-02981-LB