UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

San Francisco Division

| | |
|---|---|
| RIVER SUPPLY, INC., <br><br> Plaintiff, <br><br> v. <br><br> ORACLE AMERICA, INC., NETSUITE, INC., and SPS COMMERCE, INC., <br><br> Defendants. | Case No. 3:23-cv-02981-LB <br><br> **ORDER GRANTING MOTION TO DISMISS IN PART AND DENYING MOTION TO DISMISS IN PART** <br><br> Re: ECF No. 65 |

### INTRODUCTION

This case involves a commercial contract dispute. Plaintiff River Supply sells architectural-construction materials. Defendant Oracle America makes database and enterprise software products, and it sells its subscription services through its subsidiary, defendant NetSuite.

River Supply bought Oracle products and alleges that Oracle breached its contractual commitments and misrepresented the capabilities of its software, its experience installing its system, and its ability to provide a system that could work as promised.[1] Oracle moved to dismiss the complaint on the grounds that the economic-loss doctrine bars the fraud claims, River Supply has not pleaded actionable misrepresentations or knowledge of falsity, and River Supply did not plausibly

---

[1] Second Am. Compl. (SAC) – ECF No. 62 at 1–5 (¶¶ 1–6). Citations refer to material in the Electronic Case File (ECF); pinpoint citations are to the ECF-generated page numbers at the top of documents.

ORDER – No. 3:23-cv-02981-LB

plead its other claims of breach of warranty, breach of the implied covenant of good faith and fair dealing, theft under Cal. Penal Code § 496, negligence, unlawful competition under California's unlawful-competition law (UCL), Cal. Bus. & Prof. Code § 17200, and declaratory relief.

The economic-loss doctrine does not bar claims for fraud in the inducement. River Supply identified five fraudulent misrepresentations that satisfy Rule 9(b). That said, the fraud allegations are weak: the timeline is confusing, and there were back-and-forth negotiations that suggest that representations about the products may have evolved. To address that issue early, the court offered an early summary-judgment motion. Another option, discussed in the fraud section, is supplemental briefing if — as the court understood Oracle's argument at the hearing correctly — the timeline shows that the alleged misrepresentations were clarified during subsequent communications and thus were not false statements. The limits of that supplemental briefing are discussed in the fraud section and require Oracle to file a supplemental brief of up to seven pages by February 22, 2024, River Supply to file its opposition of up to seven pages by February 29, and Oracle to file a reply of up to five pages by March 7.

For the remaining claims, River Supply plausibly pleads breach of warranty, § 496 theft (because it pleaded fraud), and negligence (in the form of Oracle's failure to vet its vendors. The court dismisses (1) the implied-covenant claim because it duplicates the contract claim and (2) the UCL and declaratory relief claims because there is an adequate remedy at law.

### STATEMENT

River Supply is an "architectural construction material supplier" that also has a hardware store and a sister company that provides "carrier services."[2] It subscribed to a cloud-based software product from Oracle to manage its business, including retail sales, inventory, accounting and financials, warehouse operations, and customer relationships.[3] The product is branded Oracle

---

[2] *Id.* at 8 (¶ 9).

[3] *Id.* at 29 (¶ 51).

NetSuite. (NetSuite, which Oracle acquired, provides subscription services to the software.[4]) River Supply asserts that Oracle induced it to sign the contract by promising services that it knew that it could not deliver.[5] An earlier order summarized the contract terms, Oracle's alleged failure to deliver the promised software solution for River Supply's business activities (including accounting, finance, procurement, project management, supply-chain management, and manufacturing), its failure to cure its breach, and River Supply's subsequent termination of the contract.[6] This order summarizes the alleged fraudulent statements in the Analysis, below.

The defendants are Oracle, NetSuite, and Oracle vendor SPS Commerce, which helps retail partners work together by "empowering data collaboration in the retail supply chain."[7] The claims are (1) fraud in the inducement and promissory fraud to induce River Supply to enter into the contract with Oracle (against Oracle), (2) fraud in the inducement and promissory fraud on the same theory to induce River Supply to enter into contracts with Oracle and Vend/Lightspeed (against Oracle), (3) negligent misrepresentation (against Oracle), (4) negligent misrepresentation (against Oracle), (5) breach of contract (against Oracle), (6) breach of warranty (against Oracle), (7) breach of warranty (against SPS); (8) breach of the implied covenant of good faith and fair dealing (against Oracle), (9) theft in violation of California Penal Code § 496 (against Oracle), (10) a violation of California's Unfair Competition Law (UCL) (against Oracle and SPS), and (11) declaratory relief (against Oracle).[8]

## JURISDICTION

There is complete diversity of citizenship between the opposing parties, the amount in controversy exceeds $75,000, and the parties thus do not dispute the court's diversity jurisdiction.

---

[4] *Id.* at 6 (¶ 11).

[5] *Id.* at 1–5 (¶¶ 1–6).

[6] Order – ECF No. 61 at 2–9; Blackline Compare of SAC against earlier complaint – ECF No. 62-1. The court incorporates its earlier order by this reference, including its summary of the contract and breach.

[7] SAC – ECF No. 62 at 6–7 (¶¶ 10–12). Since the filing of the SAC, the plaintiff dismissed defendants Vend Limited and Lightspeed Commerce. Order Granting Stipulated Dismissal – ECF No. 67.

[8] *Id.* at 42–57 (¶¶ 90–159).

28 U.S.C. § 1332(a)(1); *Caterpillar Inc. v. Lewis*, 519 U.S. 61, 68 (1996). All parties consented to magistrate-judge jurisdiction under 28 U.S.C. § 636.[9]

## STANDARD OF REVIEW

A complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief" to give the defendant "fair notice" of (1) what the claims are and (2) the grounds upon which they rest. Fed. R. Civ. P. 8(a)(2); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). Thus, "[a] complaint may fail to show a right to relief either by lacking a cognizable legal theory or by lacking sufficient facts alleged under a cognizable legal theory." *Woods v. U.S. Bank N.A.*, 831 F.3d 1159, 1162 (9th Cir. 2016).

A complaint does not need detailed factual allegations, but "a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do. Factual allegations must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555 (cleaned up). A complaint must contain factual allegations that, when accepted as true, are sufficient to "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *NorthBay Healthcare Grp., Inc. v. Kaiser Found. Health Plan, Inc.*, 838 F. App'x 231, 234 (9th Cir. 2020). "[O]nly the *claim* needs to be plausible, and not the facts themselves. . . ." *NorthBay*, 838 F. App'x at 234 (citing *Iqbal*, 556 U.S. at 696); *see Interpipe Contracting, Inc. v. Becerra*, 898 F.3d 879, 886–87 (9th Cir. 2018) (the court must accept the factual allegations in the complaint "as true and construe them in the light most favorable to the plaintiff") (cleaned up).

Put another way, "[a] claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully."

---

[9] Consents – ECF Nos. 8, 19, 24, 31, 33.

*Id.* "Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of 'entitlement to relief.'" *Id.* (cleaned up).

Fraud allegations elicit a more demanding standard. "In alleging fraud . . . , a party must state with particularity the circumstances constituting fraud. . . . Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally." Fed. R. Civ. P. 9(b). This means that "[a]verments of fraud must be accompanied by the 'who, what, when, where, and how' of the misconduct charged." *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1106 (9th Cir. 2003). "The plaintiff must [also] set forth what is false or misleading about a statement, and why it is false." *Id.* (cleaned up). Like the basic "notice pleading" demands of Rule 8, a driving concern behind Rule 9(b) is that defendants be given fair notice of the charges against them. *In re Lui*, 646 F. App'x 571, 573 (9th Cir. 2016) ("Rule 9(b) demands that allegations of fraud be specific enough to give defendants notice of the particular misconduct . . . so that they can defend against the charge and not just deny that they have done anything wrong.") (cleaned up); *Odom v. Microsoft Corp.*, 486 F.3d 541, 553 (9th Cir. 2007) (Rule 9(b) requires particularity "so that the defendant can prepare an adequate answer").

If a court dismisses a complaint because of insufficient factual allegations, it should give leave to amend unless "the pleading could not possibly be cured by the allegation of other facts." *Cook, Perkiss & Liehe, Inc. v. N. Cal. Collection Serv. Inc.*, 911 F.2d 242, 247 (9th Cir. 1990). If a court dismisses a complaint because its legal theory is not cognizable, the court should not give leave to amend. *United States v. United Healthcare Ins. Co.*, 848 F.3d 1161, 1184 (9th Cir. 2016); *see Steele-Klein v. Int'l Bhd. of Teamsters, Loc. 117*, 696 F. App'x 200, 202 (9th Cir. 2017) (leave to amend may be appropriate if the plaintiff "identifie[s] how she would articulate a cognizable legal theory if given the opportunity").

## ANALYSIS

The issues are (1) whether the economic-loss rule bars claims for fraud in the inducement, and if not, whether River Supply alleged fraud sufficiently, (2) whether River Supply plausibly pleads a breach of warranty, (3) whether River Supply pleaded a claim for breach of the implied covenant of good faith and fair dealing, and (4) whether River Supply plausibly pleaded theft under Cal.

Penal Code § 496, negligence, unlawful competition under California's unlawful-competition law (UCL), Cal. Bus. & Prof. Code § 17200, and declaratory relief.

The economic-loss doctrine does not bar claims for fraud in the inducement, River Supply pleaded fraud with particularity, the breach-of-warranty claim survives, the negligence claim does too, and the breach of the implied covenant, UCL, and declaratory-relief claims do not.

### 1. The Fraud Claims and the Economic-Loss Rule

The parties' contract has an integration clause that disclaims the parties' reliance on statements made during negotiations and states that the contract is the parties' entire agreement.[10] River Supply claims fraud in the inducement. Oracle contends that the economic-loss rule forecloses the fraud claims and that River Supply in any event did not plead actionable fraud.[11] The economic-loss rule does not bar claims of fraud in the inducement, and River Supply pleaded fraud with particularity.

#### 1.1 The Economic-Loss Rule Does Not Bar Claims for Fraud in the Inducement

The court's earlier order summarized the economic-loss rule:

> "The economic-loss rule bars tort claims arising out of a contract, where a failed product has caused only economic loss, but has not injured anyone or damaged other property." *Grouse River Outfitters Ltd. v. NetSuite, Inc.*, No. 16-cv-02954-LB, 2016 WL 5930273, at *11 (N.D. Cal. Oct. 12, 2016) (collecting and analyzing cases). "The economic loss rule requires a purchaser to recover in contract for purely economic loss due to disappointed expectations, unless he can demonstrate harm above and beyond a broken contractual promise." *Id.* (quoting *Robinson Helicopter Co. v. Dana Corp.*, 34 Cal. 4th 979, 988 (2004)); *accord Rattagan v. Uber Techs., Inc.*, 19 F. 4th 1188, 1191 (9th Cir. 2021) ("Stated differently, a party to a contract generally cannot recover for pure economic loss — i.e., damages that are solely monetary — that resulted from a breach of contract unless he can show a violation of some independent duty arising in tort."). The purpose of the rule is to prevent "the law of contract and the law of tort from dissolving one into the other." *Robinson Helicopter*, 34 Cal. 4th at 988.
>
> Excepted from this rule are (among other things) claims that a "contract was fraudulently induced." *Id.* at 989–90; *Frye v. Wine Libr., Inc.*, No. 06-5399 SC, 2006 WL 3500605, at *2 (N.D. Cal. Dec. 4, 2006) (citing *Erlich v. Menezes*, 21 Cal. 4th 543, 552 (1999)); *Las Palmas Assocs. v. Las Palmas Ctr. Assocs.*, 235 Cal. App. 3d 1220, 1238–39 (1991); *Krzyzanowsky v. Orkin Exterminating Co.*, No. C 07-05362 SBA, 2009 WL 481267, at *11–12 (N.D. Cal. Feb. 24, 2009); *see Grouse River*, 2016

---

[10] Order – ECF No. 61 at 2–9.

[11] Mot. – ECF No. 65 at 17–25.

WL 5930273, at *11 (conducting this analysis). This includes inducement-of-the-contract claims predicated on fraud and negligent misrepresentation. *Grouse River*, 2016 WL 5930273, at *11 (citing *Frye*, 2006 WL 3500605, at *3 ("As Plaintiff's negligent misrepresentation claim can be characterized as relating to Defendant's inducement of Plaintiff to contract, there is also no question of it being barred by the economic loss rule.") (citing *Robinson Helicopter*, 34 Cal. 4th at 989).[12]

In *Robinson Helicopter*, the defendant supplied non-conforming helicopter parts to the plaintiff, fraudulently representing that the items complied with regulations when they did not. That meant that the plaintiff had to replace them at its own expense. The loss resulted from an independent act based in tort, a risk not assumed by the plaintiff, and the defendant thus was liable for the loss. 34 Cal. 4th at 984. Put another way, the risk was not voluntarily assumed because one does not enter into a contract with the expectation that one's counterpart has lied about its product to fraudulently induce the contract. *See id.* at 990 ("conduct which is both intentional and intended to cause harm" "gives rise to tort liability"), 991 ("fraud is a tort independent of the breach"), 993 (doctrine did not bar a claim for fraud in the inducement based on the defendant's "affirmative misrepresentations on which a plaintiff relies and which expose a plaintiff to liability for personal damages independent of the plaintiff's economic loss").

Thus, as the court held previously, the economic-loss doctrine does not bar claims for fraud in the inducement of a contract.[13] *See Grouse River*, 2016 WL 5930273, at *11 (collecting cases); *White v. FCA US LLC*, No. 22-cv-00954-BLF, 2022 WL 3370791, at *5 (N.D. Cal. Aug. 16, 2022) (misrepresentations inducing sale of a Jeep Cherokee); *R Power Biofuels, LLC v. Chemex LLC*, No. 16-CV-00716-LHK, 2017 WL 1164296, at *1, *5–7, *12 (N.D. Cal. Mar. 29, 2017) (in case claiming a failure to adequately build a biodiesel plant, the court held that (1) "fraudulent inducement is a well-recognized exception to the economic loss rule" and (2) promises that fraudulently induced the contract — specifically, promises that refurbished components would meet the required specification of the original contract — were actionable and not precluded by the economic-loss doctrine) (collecting and analyzing cases); *cf. Synology Inc. v. Via Licensing Corp.*,

---

[12] Order – ECF No. 61 at 20–23.

[13] *Id.* at 22 (collecting cases).

ORDER – No. 23-cv-02981-LB            7

No. 22-cv-01405-TLT, 2023 WL 3149250, at *1, *3–4 (N.D. Cal. Mar. 1, 2023) (in case by a patent licensee claiming that a patent-pool administrator failed to pay license fees, the administrator countersued for breach of contract, breach of warranty, and fraud; the court applied the economic-loss rule because the administrator did not allege that the licensee induced the administrator to enter into the contract; the claim as pled was only a claim for failure to perform the terms of the contract).

In concluding that the economic-loss doctrine did not preclude the misrepresentation claims here, the court rejected Oracle's argument that courts apply the fraud exception only in product-liability cases.[14] The fraud exception does make sense in product-liability cases: as a matter of policy, it allows recovery for extra-contractual injury (injury to person or property) and allocates the duty to the party most able to identify the risk of that injury (the manufacturer).[15] *See Erlich*, 21 Cal. 4th at 550–51 (contract law enforces the intentions of the parties to the agreement, and "tort law is primarily designed to vindicate 'social policy.'"). But no binding authority categorically limits the doctrine to product-liability cases.[16] The economic-loss rule exists because the parties to a contract have agreed to allocate risk. A party that is the victim of fraud has not assumed contract risk voluntarily. Here, River Supply relied on Oracle's misrepresentations, exposing it to a loss that exceeded its contract damages (given the limitation of liability), at least somewhat analogously to a customer who does not assume the risk of personal injury from a defective product. And it is bad policy if a party can induce a contract that limits its liability by lying about its product's capabilities.[17] From that perspective, this case is not so different from *Robinson Helicopter.*

Oracle cites cases where the courts have applied the economic-loss rule to limit damages to contractually bargained limits. But those cases are distinguishable: they involved only breach of the contract, not fraudulent inducement of the contract. In *Westport Ins. Corp. v. Vasquez, Estrada & Conway LLP*, the economic-loss rule barred misrepresentation claims against an insurance company for its failure to pay legal fees. No. 15-CV-05789-JST, 2016 WL 1394360, at *5 (N.D. Cal. Apr. 8,

---

[14] *Id.* at 21.

[15] *Id.*

[16] *See id.* (citing cases).

[17] *Id.* at 22.

2016). The allegedly false promises to pay also were the "basis for . . . the breach of contract claim" and "the same economic loss that [the plaintiff alleges in its breach of contract claim." *Id.* at *6. Also, the promises were not "independent from the various promises made by the parties in the course of their contractual relationship." *Id.* Here, by contrast, the claim is that Oracle lied about its ability to deliver a product in order to induce a contract.

Oracle's other cases similarly do not involve fraudulent inducement by misrepresentations. *See Block Sci. Inc. v. True Diagnostics, Inc.*, No. 21-CV-1118 JLS (JLB), 2022 WL 485010, at *10 (S.D. Cal. Feb. 16, 2022) (untimely delivery of tests, untimely submission of tests for emergency-use authorization, and failure to attain emergency-use authorization allegedly disrupted the plaintiff's business contracts and economic relationships with third parties; the economic-loss doctrine barred the claims for the resulting economic loss); *Virgin Scent, Inc. v. BT Supplies W., Inc.*, 615 F. Supp. 3d 1118, 1136 (C.D. Cal. 2022) (the claim was that the supplier never intended to honor the contract to deliver hand sanitizer during the pandemic; at summary judgment, the court held that there was no evidence of this; it also held that the economic-loss doctrine precluded recasting a straightforward claim for breach of a commercial contract as a tort based on nothing more than a defendant's "alleged failure to make good on its contractual promises"); *Erlich*, 21 Cal. 4th at 554 (contractor's negligent construction of a house and attempts to repair it; "In this case, the jury concluded Menezes did not act intentionally; nor was he guilty of fraud or misrepresentation. This is a claim for negligent breach of a contract, which is not sufficient to support tortious damages for violation of an independent tort duty."); *Jimenez v. Super. Ct.*, 29 Cal. 4th 473, 483 (2002) (defective windows installed in a residential home; "[T]he economic loss rule allows a plaintiff to recover in strict products liability in tort when a product defect causes damage to 'other property,' that is, property other than the product itself. The law of contractual warranty governs damage to the product itself.").

Again citing product-liability cases, Oracle contends that there must be personal injury or property damage for extracontractual recovery.[18] That makes sense in product-liability cases: what other damage is there. *See Yarber v. Kia Am. Inc.* No. 22-CV-03411-HSG, 2023 WL 2654186, at *2

---

[18] Mot. – ECF No. 65 at 18–19.

(N.D. Cal. Mar. 27, 2023) (automobile-defect case that claimed fraudulent concealment, not fraudulent inducement; the economic-loss doctrine barred the claim because the plaintiff alleged only economic loss, not personal injury or damage to property); *Barela v. FCA US, LLC*, No. EDCV-22-01444 (JGB), 2022 WL 19333334, at *2 (C.D. Cal. Oct. 11, 2022) (automobile defect); *Sum v. FAC US, LLC*, No. 2:22-cv-00213-RGK-RAO, 2022 WL 2189628, at *2–3 (C.D. Cal. Apr. 25, 2022) (automobile defect). But it does not follow that that extracontractual recovery allows recovery only in cases involving injury to person or property because the economic-loss doctrine does not bar claims for fraud in the inducement,

Oracle points out that *Barela* also involved a claim of fraudulent inducement.[19] But the court there applied the economic-loss doctrine because the claim involved omissions, not affirmative misrepresentations. 2022 WL 19333334, at *2 (characterizing the weight of authority as permitting only claims for inducement involving misrepresentations, not omissions).

Another consideration that supports allowing the fraudulent-inducement claims here is the line of authority that permits parol evidence to prove that a contract is void or voidable for fraud in the inducement.[20] *Grouse River*, 2016 WL 5930273, at * 6–7 (collecting cases).

Somewhat relevantly, the Ninth Circuit has certified to the California Supreme Court the question of whether the economic-loss doctrine excepts claims for fraudulent concealment. *Rattagan,* 19 F.4th at 1193. In *Rattagan*, a lawyer was retained to provide services related to the launch of an Uber subsidiary's ride-sharing platform in Argentina. When Uber launched its platform, its Argentine subsidiary was not "fully formed or registered with the proper tax authority," which meant that the lawyer had personal liability, a fact that Uber allegedly concealed. *Id.* at 1189–90. The district court held that the economic-loss rule foreclosed the fraud claim. *Id.* at 1190. On appeal, in certifying the question to the California Supreme Court, the Ninth Circuit distinguished between "disappointed expectations" (recoverable only as economic loss in contract) and "harm above and beyond a broken contractual promise" (recoverable in tort). *Id.* at 1191. In

---

[19] Reply – ECF No. 70 at 14.

[20] Order – ECF No. 61 at 22.

framing the issue, the Ninth Circuit referenced the California Supreme Court's holdings that the economic-loss rule "does not bar fraud claims premised on affirmative misrepresentations." *Id.* (tortious conduct — in the form of "affirmative misrepresentations on which a plaintiff relies and which expose a plaintiff to liability for personal damages independent of the plaintiff's economic loss" — is separate from the breach of contract). *Rattagan* is a non-product case, and the Ninth Circuit's pronouncement on the scope of the economic-loss doctrine informs the decision here that the economic-loss doctrine does not bar a claim for fraudulent misrepresentations to induce a contract with a limitation of liability.

A final observation is that the court had the same legal issues in *Grouse River*, a case where the Ninth Circuit reversed the court's holding that two statements were puffery and instead held that they were actionable misrepresentations. *Grouse River Outfitters, Ltd. v. Oracle Corp.*, 848 F. App'x 238, 243–44 (9th Cir. 2021). That informs the decision here too.

\* \* \*

In sum, the misrepresentation claims are not barred by the economic-loss rule.

**1.2 Fraud**

The elements of fraud are (1) a material misrepresentation (or omission), (2) knowledge of falsity, (3) an intent to defraud, (4) justifiable reliance, and (5) resulting damages. *Lazar v. Super. Ct.*, 12 Cal. 4th 631, 638 (1996). "Unlike fraud, a claim for negligent misrepresentation 'does not require knowledge of falsity, but instead requires a misrepresentation of fact by a person who has no reasonable grounds for believing it to be true." *Beard v. Int'l Bus. Machs. Corp.*, No. 18-cv-06783-WHA, 2019 WL 1516592, at *2 (N.D. Cal. Apr. 7, 2019) (quoting *Chapman v. Skype Inc.*, 220 Cal. App. 4th 217, 230–31 (2013)).

Oracle moved to dismiss on the ground that River Supply did not allege (1) actionable misrepresentations (essentially because the statements are not false, the allegations are vague, or the statements are nonactionable puffery or opinions) or (2) knowledge of falsity.[21]

---

[21] Mot. – ECF No. 65 at 17–25; Reply – ECF No. 70 at 6–13. It thus concedes the sufficiency of the other allegations.

ORDER – No. 23-cv-02981-LB                           11

**1.2.1 Actionable Misrepresentations**

The court's earlier order summarized the legal standard:

> Statements constituting mere "puffery" cannot support liability for fraud or negligent misrepresentation. *Glen Holly Ent., Inc. v. Tektronix, Inc.*, 100 F. Supp. 2d 1086, 1093 (C.D. Cal. 1999). "Puffery" has been described "as making generalized or exaggerated statements such that a reasonable consumer would not interpret the statement as a factual claim upon which he or she could rely." *In re All Terrain Vehicle Litig.*, 771 F. Supp. 1057, 1061 (C.D. Cal. 1991) (citing *Cook, Perkiss & Liehe, Inc. v. N. Cal. Collection Serv.*, 911 F.2d 242, 246 (9th Cir. 1990)). "[U]ltimately, the difference between a statement of fact and mere puffery rests in the specificity or generality of the claim." *Newcal Indus., Inc. v. Ikon Off. Sol.*, 513 F.3d 1038, 1053 (9th Cir. 2008). "[A]dvertising which merely states in general terms that one product is superior is not actionable." *Cook*[], 911 F.2d at 246 (quoting *Smith-Victor Corp. v. Sylvania Elec. Prods., Inc.*, 242 F. Supp. 302, 308 (N.D. Ill. 1965))[; *see also Oestreicher v. Alienware Corp.*, 544 F. Supp. 2d 964, 973 (N.D. Cal. 2008) (statements of product superiority such as "superb, uncompromising quality" and "faster, more powerful, and more innovative than competing machines" are non-actionable puffery) (collecting cases holding that "high performance," "top of the line," reliable mobile-computing solution, and "do more on the move" are non-actionable puffery).] "However, misdescriptions of specific or absolute characteristics of a product are actionable." [*Cook*[]*,* 911 F.2d at 246 (quoting *Stiffel Co. v. Westwood Lighting Grp.*, 658 F. Supp. 1103, 1115 (D.N.J. 1987)).
>
> "[P]redictions as to future events, or statements as to future action by some third party, are deemed opinions, and not actionable fraud." *Tarmann v. State Farm Mut. Auto. Ins. Co.*, 2 Cal. App. 4th 153, 158 (1991). "Certain broken promises of future conduct may, however, be actionable." *Id*. "A false promise is actionable on the theory that a promise implies an intention to perform, that *intention to perform or not to perform* is a state of mind, and that misrepresentation of such a state of mind is a misrepresentation of *fact.* The allegation of a *promise* (which implies a representation of intention to perform) is the equivalent of the ordinary allegation of a representation of fact." *Id.* at 158–59 (quoting 5 B. Witkin, Cal. Procedure at 120 (3d ed. 1985)). "To maintain an action for deceit based on a false promise, one must specifically allege and prove, among other things, that the promisor did not intend to perform at the time he or she made the promise and that it was intended to deceive or induce the promisee to do or not do a particular thing." *Id.*; *see Randell v. Levi Strauss & Co.*, No. C 05-1047 CW, 2006 WL 1310464, at *6 (N.D. Cal. May 12, 2006) ("Levi Strauss was a good company to work with, it was fair, [and] it was a place that [the plaintiff could] retire from" was a non-actionable opinion and statement about a future event).
>
> Whether an alleged misrepresentation is a non-actionable statement of puffery is a question of law. *Cook*[], 911 F.2d at 246.[22]

---

[22] Order – ECF No. 61 at 24–25.

In its opposition, River Supply identified five fraudulent misrepresentations (addressed in the next five sections) that induced it to enter into the contract.[23]

### 1.2.1.1 NetSuite Had the Same Functionality as ECI Spruce

The first alleged misrepresentation is that NetSuite had the same functionality as ECI Spruce and could update images and URLs of inventory items from suppliers Orgill and House Hasson as those images changed.[24] Specifically, on January 12, 2021, Troy Landsburg (from Oracle) said that "NetSuite had the ability to automatically update images, purchase orders, inventory items and the other information from RSI's suppliers including Orgill and House Hasson."[25] This allegedly was false because NetSuite could not process images in URL format and thus the images could not update automatically. The complaint describes when the problem was identified. Post-contract, and during the implementation phase, Oracle vendor (and defendant) SPS asked the suppliers to convert the URLs to a static format so that River Supply could upload them to NetSuite. River Supply replied that converting would not work because Orgill had over 70,000 images, including 7,000 that changed each year. Oracle's system provided "no way to tell if an item from Orgill's catalog changed and the image could not be automatically updated. Everything would need to be manually updated and the manual updating would take an exorbitant amount of time and money."[26]

The allegedly false statement is actionable because it is a statement of fact about the product's

---

[23] Opp'n – ECF No. 69 at 6–10.

[24] *Id.* at 6–8 (citing SAC – ECF No. 69 at 10–11 (¶ 25), 13–15 (¶ 30), 20 (¶ 37), 24–26 (¶¶ 44–45), 37 (¶ 65), 39–40 (¶¶ 69–70), 41–43 (¶¶ 74–75), 44–45 (¶ 79), and 56–73 (¶ 93, specifically, the statements at 52:13–55:5–58:13, 61:8–62:18, 64:14–66:22, and 73:7–74:18). River Supply did not quote specific false statements and instead string cited ten paragraphs to support its contention that a false statement was made. It then focused on materiality. *Id.* Partly this is because the complaint does not allege false statements in one place. The correct way to allege fraud is to say, on a specific date, person A said X, knowing it was false because Y. (This could be followed by an explanation about why the false statement was material.) By contrast, citing ten paragraphs (often big paragraphs) to support a contention that a false statement was made was not helpful and forced the court to wade through ten paragraphs to see whether collectively, they establish a false statement. That is not the court's job.

[25] *Id.* at 14:24–26 (¶ 30); *accord id.* at 64:14–65:22 (¶ 93) (on January 12, 2021, Mr. Landsberg said that NetSuite had the same capabilities as ECI Spruce in that it could automatically upload images of inventory items provided from RSI's suppliers Orgill and House Hasson.).

[26] *Id.* at 44–45 (¶ 79); *accord id.* at 64:14–65:22 (¶ 93) (the representation was false because the functionality did not exist in NetSuite in the same form used by other ERP providers such as ECI Spruce because NetSuite used static images that would not automatically update with changes).

capabilities, not a nonactionable opinion. Moreover, if an "opinion is rendered under circumstances such that it may be regarded as amounting to a positive affirmation of fact, it will be treated as a representation of fact for purposes of a deceit action…. [W]hen a party possesses or holds itself out as possessing superior knowledge or special information or expertise regarding the subject matter and a plaintiff is so situated that it may reasonably rely on such supposed knowledge, information, or expertise, the defendant's representation may be treated as one of material fact." *Neu-Visions Sports, Inc. v. Soren/McAdam/Bartells,* 86 Cal. App. 4th 303, 307 (2000).

Oracle contends that the statement is not false because the parties never got granular about URLs.[27] But River Supply alleges that the functionality did not exist because NetSuite used static images that did not update automatically. The issue of falsity is at least an issue of fact that cannot be addressed at the pleadings stage. Also, Oracle knew that River Supply is a hardware store: to the extent that it argues that the 70,000 images were a surprise, that too is a fact issue.

At the hearing, Oracle cited paragraphs 31 and 41 of the complaint and two exhibits to the complaint: Exhibit 2, which is a description of the NetSuite system, and Exhibit 3, a color-coded version of Exhibit 2, which divides the system into three pieces (NetSuite standard, NetSuite additional module, and partner solution).[28] Oracle described Exhibit 3 as a document provided on February 15, 2021. As the court understood the argument (and there is no transcript yet), Oracle contended that the timeline shows that Mr. Landsberg did not make the January 12 representation or at least clarified the functionality in subsequent communications.

This is not the exact argument made in the reply brief. Moreover, given a 228-page complaint (including attachments), and a reiteration of the same statements in different sections of the complaint, the court cannot conclude that the statement — "NetSuite had the ability to automatically update images" — was not actually a false statement because there was a later clarification of it.

That said, the problem here is that the SAC was too prolix to satisfy Rule 8(a), let alone Rule

---

[27] Reply – ECF No. 70 at 7.

[28] Docs., Exs. 2–3 to SAC – ECF No. 62 at 189–94.

9(b), and it was not until the opposition that River Supply identified five false statements. This made it even harder for the court to evaluate the parties' arguments. To remedy that, the court offered at the hearing to stage early discovery and allow an early summary-judgment motion. But if Oracle thinks that there is a timeline argument that it can make at the pleadings stage, the court will allow supplemental briefing as follows. By February 22, 2024, limited to the five false statements, Oracle may file a supplemental brief of up to seven pages that quotes statements, provides dates, and analyzes why they are demonstrably not false. By February 29, River Supply must file its opposition of up to seven pages. By March 7, Oracle must file a reply of up to five pages.

### 1.2.1.2 Automatic Updating of Purchase Orders

The second alleged misrepresentation is that NetSuite could automatically update purchase orders.[29] Specifically, on February 11, 2021, Mr. Landsberg and others said that "the NetSuite solution has the same capabilities as ECI Spruce to automatically revise purchase orders to include updated information such as price, quantity, product descriptions, and back-order status. . . ."[30] This was false because during the implementation process, River Supply learned that NetSuite did not provide automatic updating because that functionality did not exist in the NetSuite "solution."[31]

This is an actionable statement of fact about the product's capabilities. Oracle nonetheless characterizes the statement as vague, citing an insurance case involving a representation about covered losses "not covered by primary insurance policies maintained by homeowners' associations."[32] That coverage representation is vague. The representation here — about a software solution's ability to revise purchase orders to include basic information such as price, quantity, product description, and status — is not.

### 1.2.1.3 Bin Tracking and Scanning Functionality

The third misrepresentation is that NetSuite could — like ECI Spruce — scan inventory items.[33]

---

[29] Opp'n – ECF No. 69 at 8 (citing SAC – ECF No. 69 at 62:19–64:13 (¶ 93)).

[30] SAC – ECF No. 62 at 62:23–28 (¶ 93).

[31] *Id.* at 63:8–11 (¶ 93).

[32] Reply – ECF No. 70 at 7–8 (citation omitted).

[33] Opp'n – ECF No. 69 at 9.

Specifically, on February 11, 2021, Mr. Landsberg said that NetSuite, like ECI Spruce, "was able to tally scan inventory items in multiple bins and bin scan."[34] This was false because the NetSuite solution did not have the promised functionality.[35] This is an actionable statement of fact about the product's capabilities. Oracle nonetheless contends that this is not specific enough because it does not say exactly how NetSuite "could not perform these functions" and is otherwise vague.[36] It is enough at the pleadings stage to say who promised the functionality and whether it was delivered. Why it was not delivered is an issue of fact better addressed at summary judgment.

### 1.2.1.4 Ability to Track Inventory

The fourth misrepresentation is that NetSuite could track inventory.[37] Specifically, on February 11, 2021, Mr. Landsberg said that NetSuite could track inventory in the store and in multiple places in the warehouses, and then it could exchange data with the point of sale so that the store knew what items were in stock and could be sold.[38] This was false because the NetSuite solution did not have that promised functionality.[39] This is an actionable statement of fact about the product's capabilities.

### 1.2.1.5 Contract Was a Fixed Price

The fifth misrepresentation is that the contract would have all required functionalities at a fixed price.[40] On February 11 and 17, 2021, Mr. Landsberg and Oracle employee Dan D'Amato said that the NetSuite solution had automatic updating functionality for images and purchase orders at a fixed price.[41] On February 19, 2021, Mr. Landsberg said that the "software costs now consist of all the things you outlined as needed" (referencing a robust earlier exchange of

---

[34] SAC – ECF No. 62 at 21 (¶ 39), 92:14–93:11 (¶ 101).

[35] *Id.* at 57:16–58:13 (¶ 93).

[36] Reply – ECF No. 70 at 8.

[37] Opp'n – ECF No. 69 at 9.

[38] SAC – ECF No. 62 at 14 (¶ 30), 21 (¶ 39), 66:23–28, 67:22–68:21, 70:1–26 (¶ 93).

[39] *Id.* at 67:3–5, 68:2–21 (¶ 93).

[40] Opp'n – ECF No. 69 at 9.

[41] SAC – ECF No. 62 at 52:23–54:6, 62:19–64:13, 70:27–72:5 (¶ 93), 82:27–84:19 (¶ 101).

ORDER – No. 23-cv-02981-LB                         16

deliverables).[42] This was false because the functionality did not exist in the NetSuite solution.[43]

This is an actionable statement of fact about the product's capabilities for updating functionality for images and purchase orders at a fixed price.

* * *

The plaintiff said in its brief and reiterated at the hearing that the five statements were "representative" five statements.[44] It did not identify any other statements. The complaint is prolix and does not satisfy Rule 8(a) or 9(b). The actionable fraud allegations are the five identified by the plaintiff, and no more.

### 1.2.2 Knowledge of Falsity

Oracle contends that the plaintiff has not offered facts supporting a reasonable inference that Oracle" had knowledge of an alleged misrepresentation or an intent to defraud." It cites a case where the plaintiff alleged only that "Apple intended to mislead Juel when it made representations about possession and ability to reasonably access, transfer, store and utilize Products purchased from the Apple stores because the representations were false."[45] The representations here are more specific: Oracle made statements about product functionality, knowing that they were false.

This is not a ground for dismissal.

## 2. Breach of Warranty

The court's earlier order recited the legal standard:

> Under California law, an express warranty is created by "[a]ny affirmation of fact or promise made by the seller to the buyer which relates to the goods and becomes part of the basis of the bargain." Cal. Com. Code § 2313(1)(a). "[T]o prevail on a breach of express warranty claim, the plaintiff must prove [that] (1) the seller's statements constitute an affirmation or promise, or a description of the goods; (2) the statement was part of the basis of the bargain; and (3) the warranty was breached." *Weinstat v. Dentsply Int'l, Inc.*, 180 Cal. App. 4th 1213, 1227 (2010) (cleaned up). "To establish

---

[42] *Id.* at 26 (¶ 46).

[43] *Id.* at 63:8–12 (¶ 93).

[44] Opp'n – ECF No. 69 at 11.

[45] Mot. – ECF No. 65 at 24 (quoting *Herskowitz v. Apple Inc.*, 940 F. Supp. 2d 1131, 1148 (N.D. Cal. 2013)) (cleaned up); Reply – ECF No. 70 at 12.

the existence of an express warranty, a plaintiff must point to a specific and unequivocal statement." *Watkins v MGA Ent., Inc.*, 574 F. Supp. 3d 747, 756 (N.D. Cal. 2021) (cleaned up).

The warranty required Oracle to perform (1) the Cloud Service using reasonable care and (2) the Professional Services and Support Services in a professional manner consistent with industry standards. Oracle contends that River Supply did not allege how it failed to use reasonable care or perform consistent with industry standards. River Supply counters that it was enough to allege Oracle's failure to provide the services using commercially reasonable care and skill. River Supply did not identify specific written statements of warranty that were breached, at least regarding the Cloud Service (the main part of the contract). Instead, it alleges only a breach of contract. The court dismisses the claim with leave to amend.[46]

Oracle asserts that the claim duplicates the claim for breach of contract, citing one case from the Central District of California.[47] There is a warranty in the contract.[48] Also, now (unlike the earlier iteration of the complaint), River Supply pleads affirmative promises about the goods that allegedly were knowingly false. At the pleadings stage, and absent any citation by Oracle compelling a different result (but for the one case), River Supply plausibly pleads a claim. Oracle also contends that River Supply did not timely notify it of its deficient performance.[49] But River Supply contends that it did.[50] The claim survives.

### 3. Breach of Implied Covenant of Good Faith and Fair Dealing

The court's earlier order set forth this legal standard:

The covenant of good faith and fair dealing is implied in every contract and prevents one party from "unfairly frustrating the other party's right to receive the benefits" of the contract. *Guz v. Bechtel Nat'l Inc.*, 24 Cal. 4th 317, 349 (2000). To allege a claim for the breach of the implied covenant of good faith and fair dealing, a plaintiff must allege the following: (1) the plaintiff and the defendant entered into a contract; (2) the plaintiff did all or substantially all of the things that the contract required him to do or that he was excused from having to do; (3) all conditions required for the defendant's performance occurred; (4) the defendant unfairly interfered with the plaintiff's right to receive the benefits of the contract; and (5) the defendant's conduct hurt the plaintiff. *Oculus Innovative Scis., Inc. v. Nofil Corp.*, No. C 06-

---

[46] Order – ECF No. 61 at 26–27 (citations omitted).

[47] Reply – ECF No. 70 at 17.

[48] Opp'n – ECF No. 69 at 25.

[49] Reply – ECF No. 70 at 17.

[50] SAC – ECF No. 62 at 102 (¶ 133).

01686 SI, 2007 WL 2600746, at *4 (N.D. Cal. Sept. 10, 2007). The implied covenant "cannot impose substantive duties or limits on the contracting parties beyond those incorporated in the specific terms of their agreement." *Guz*, 24 Cal. 4th at 349–50. "To the extent the implied covenant claim seeks simply to invoke terms to which the parties *did* agree, it is superfluous." *Id.* at 352.

Here, River Supply alleges breach of the contract in the form of Oracle's failure to perform, but it does not specify which representations were something "beyond those incorporated into the specific terms" of the agreement. The court dismisses the claim with leave to amend.[51]

To the extent that the claim duplicates the contract claim, there is no standalone claim.[52] " *Pierry, Inc. v. Thirty-One Gifts, LLC*, No. 17-CV-03074-MEJ, 2017 WL 4236934, at *4 (N.D. Cal. Sept. 25, 2017) (a claim for a breach of the implied covenant of good faith and fair dealing must allege "clearly different" breaches). And there is no special relationship that creates a fiduciary relationship that requires something more than ordinary arms' length relationship. *Pension Tr. Fund for Operating Eng'rs v. Fed. Ins. Co.*, 307 F.3d 944, 955 (9th Cir. 2002).

### 4. California Penal Code § 496

The court's earlier order summarized the legal standard. River Supply pleaded a fraud claim and so pleads a § 496(a) claim. *Grouse River*, 848 F. App'x at 242.

### 5. Negligence

The negligence claim is predicated on Oracle's failure to vet its vendors, who did not deliver the promised functionality.[53] Oracle moves to dismiss in part on the ground that it is a new claim that was not anticipated in the earlier order allowing amendment of the claims.[54] The court did not intend to forestall new claims predicated on the existing facts. In its reply, Oracle asserts only the argument that the plaintiff should not have raised this new claim.[55] Leave to amend is liberally

---

[51] Order – ECF No. 61 at 26.

[52] *Id.*

[53] Opp'n – ECF No. 69 at 26–27 (citations omitted).

[54] Mot. – ECF No. 65 at 30.

[55] Reply – ECF No. 70 at 16.

granted. Fed. R. Civ. P. 15(a); *see Sonoma Cnty. Ass'n of Retired Emps. v. Sonoma Cnty.*, 708 F.3d 1109, 1118 (9th Cir. 2013).

Oracle did not otherwise challenge in its reply brief the plaintiff's allegations about why Oracle had a duty to vet its vendors to make sure that they delivered the contracted services.[56] The claim thus survives, limited to this theory.

### 6. UCL Claim

River Supply contends only that the UCL claim should not be dismissed because it asks for an injunction.[57] Nothing suggests that damages won't make River Supply whole. *Sonner v. Premier Nutrition Corp.* 971 F.3d 834 (2020). The court dismisses the UCL claim.

### 7. Declaratory Relief

The claim here is that the contract is voidable. That duplicates the breach-of-contract claim, allegedly induced by fraud. To the extent that the relief is allowed through other claims, the court dismisses this standalone claim.

## CONCLUSION

The court grants the motion to dismiss the implied-covenant, UCL, and declaratory-relief claims and otherwise denies the motion to dismiss. The court allows the supplemental briefing described in the fraud section as follows: Oracle's supplemental brief of up to seven pages due February 22, 2024, River Supply's opposition of up to seven pages due February 29, 2024, and Oracle's reply of up to five pages due March 7, 2024.

This resolves ECF No. 65.

**IT IS SO ORDERED.**

Dated: February 16, 2024

_____
LAUREL BEELER
United States Magistrate Judge

---

[56] Opp'n – ECF No. 69 at 26–27.

[57] *Id.* at 29–30.